Bentley Kassal, J.
ISSUE
Can a cleverly worded "savings clause”, appended to an otherwise improper renewal lease, convert it so that it complies with the Rent Stabilization Regulations?
FACTS
Respondent is the tenant of an apartment subject to the Rent Stabilization Law of 1969. (Administrative Code of the City of New York, § YY51.) Pursuant to that law and the Code of the Real Estate Industry Stabilization Association of New York City, Inc. adopted thereunder, the landlord is required to "offer to renew the lease at the stabilization rent permitted for such renewal lease and otherwise on the same conditions as the expiring lease ”(§ 60; emphasis added).
Section 23 (subd [A], par [2]) of the code further provides that "refusal of the tenant to sign a renewal * * * shall constitute a basis for refusal to renew and eviction”.
Landlord’s holdover petition for possession alleges, inter alia, that a proper renewal lease was offered to the respondent, but respondent refused to execute it.
*491 In opposition, respondent, maintaining that the renewal lease offered was not on "the same conditions” as the expiring lease, refused to sign it and now contends that this cannot constitute a basis for this eviction proceeding. Further, respondent claims that the doctrine of collateral estoppel bars the petitioner from asserting that a proper renewal lease was offered. In support of this, she contends that the original executed lease and the renewal lease, which the landlord first offered her, were virtually identical to the two leases before the court in Mehlman Mgt. Corp. v Meyers (NYLJ, June 14, 1974, p 17, col 6, Sup. Ct., N. Y. County [Korn, J.]). In that case, Justice Hyman Korn painstakingly compared the leases and found "that there are substantial differences in the new and expired agreements.”
The landlord concedes that the first renewal lease tendered was essentially the same as that which Justice Korn decided was insufficient under the Rent Stabilization Law and the code, nor is it disputed that the landlord herein had a full and fair opportunity to contest this issue before Justice Korn. Therefore, I find that with regard to the first lease offered, the landlord would be barred by the doctrine of collateral estoppel from maintaining this proceeding on the basis of respondent’s refusal to sign this renewal lease. (Schwartz v Public Administrator, 24 NY2d 65.)
"savings clause”
However, the petitioner inserted another ingredient by allegedly serving a second identical renewal lease, with the added touch of a "savings clause,” as a final provision, which reads: "thirty-fourth — In the event there is any printed term or condition contained in the renewal lease presently being offered to you covering the premises * * * that in any way varies from your present lease, except for term and amount thereof, it is hereby understood and agreed that your present lease shall govern. It is further agreed that each succeeding renewal lease offered to you covering the same premises, shall continue to be subject to the same terms and conditions as your present lease * * * as long as the Rent Stabilization Law is in effect and requires same and further subject to any changes prescribed by the Rent Stabilization Law or by the Conciliation and Appeals Board.” (Emphasis added.)
Petitioner argues that "the insertion of the 'savings clause’ raises critical issues not present in the Meyers case and *492 prevents respondent from successfully pleading the doctrine of collateral estoppel.”
Petitioner’s "savings clause” is truly a remarkable literary and legalistic effort and appears to be a combination of legerdemain and alchemy. By the first sentence, it would convert two leases with "substantial differences” instantaneously and automatically into one and the same lease. By the second sentence, it proposes to make all leases offered in the future, either with or without a savings clause, and without limitation as to any differences in the provisions therein contained, the "same” for the purpose of the Rent Stabilization Law.
To permit the savings clause to have this legal effect would be unconscionable and contrary to the spirit, if not the letter, of Justice Korn’s decision. As Justice Korn observed: "I can see no practical reason for not offering the same form of lease as the expired one or in any event a simple extension agreement thereof. To place the burden on a tenant to examine a highly complicated and sophisticated legal instrument, to compare it with the expired lease to see whether both contain the same conditions is not logical and not consonant with the present spirit of the law.”
Clearly the burden placed upon the tenant is immeasurably increased rather than reduced by the "savings clause.” To require a tenant to examine numerous complicated and differently worded provisions, compare and evaluate them for legal interpretation and validity and thereafter make a value judgment as to whether he should sign such lease or seek the services of an attorney, at the peril of eviction for not signing, is indeed unconscionable.
A lease is no different than any other contract (Parkwood Realty Co. v Marcano, 77 Misc 2d 690 and the citations therein) and as such will not be enforced if the result would be unconscionable. (Tai On Luck Corp. v Cirota, 35 AD2d 380; Seabrook v Commuter Housing Co., 72 Misc 2d 6.)
One must question why the landlord has maneuvered so feverishly to avoid offering tenants renewal leases which contain the "same” conditions as their original leases; but, if there still be any question, at this juncture, as to the holding of this case, it is simply this — the "same” conditions mean the "same” conditions. A lease with different conditions will not satisfy the Rent Stabilization Law and the code.
*493 Therefore, respondent’s motion is granted and the proceedings are dismissed.
The other motions by respondent are now rendered academic.
(On reargument, August 25,1975)
Petitioner’s motion for leave to reargue the order of this court dated May 16, 1975 is granted. Upon such reargument, I am adhering to the original decision, since the petitioner has not demonstrated that the court misapprehended any principle of law or overlooked any facts in reaching the original determination. However, I am supplementing the original decision by adding the following paragraph thereto (this is to be inserted in a new section after the last paragraph in the section entitled "Facts” and before the section entitled "Savings Clause”):
COMPARISON OF ORIGINAL AND PROPOSED RENEWAL LEASES
"Irrespective of the above determination in regard to collateral estoppel, I have made an independent evaluation and comparison of the original lease and the renewal lease offered to the tenant. Based upon such review, I am deciding that the renewal lease does not comply with section 60 of the Code. It would be superfluous to recount herein the substantial and significant differences between the two leases which have already been identified by Justice Korn. I concur with the conclusions of law stated in that decision. (Meyers, supra.)”
petitioner’s contentions
While it is not necessary to discuss in detail all of petitioner’s arguments on this motion, some do warrant further comment.
The landlord, in support of this motion to reargue now contends that "The C.A.B. [The Conciliation and Appeals Board (hereafter C.A.B.)] had previously ruled that a renewal lease in the same form as the renewal lease herein is in compliance with its regulations”. In support of this argument, landlord cites two C.A.B. opinions: Gervais v Mehlman Mgt. Corp. (Opn. No. 2918, Nov. 7, 1974 [hereafter Gervais]) and Mendel v Mehlman Mgt. Corp. (Opn. 3428, May 15, 1975 [hereafter Mendel]).
*494 GERVAIS CASE
In Gervais, the C.A.B. was asked to determine the effective date of increased rental. It only held that the increase was effective at the time when the tenant accepted the new lease and not prior thereto (there was no refusal by the tenant to execute a renewal lease).
While the facts in Gervais are distinguishable from those herein, it may be instructive to note one determination therein by the C.A.B. with respect to the other issues presented on this motion: "The Board following the findings and determination of the Supreme Court in the cited case of Mehlman Management v Meyers (supra), finds pursuant to Section 60, that the renewed lease was not on the same conditions as the expired lease. ” (Emphasis added.) (Gervais, supra, p 2.)
The C.A.B. went on to find that the owner did not comply with section 60 of the Code of the Real Estate Industry Stabilization Association of New York City Inc. (hereafter Code) until a renewal lease apparently containing a "savings clause” similar to the one at issue herein, was accepted by the tenant. In this regard, the C.A.B. also noted in the "Facts” section of the opinion that the clause was drafted "after negotiation between owner’s attorney and the tenant’s group in the subject building”. (Gervais, supra, p 1.) (While such a holding appears to be contrary to section 11 of the Code, it is the most reasonable interpretation of the opinion.)
MENDEL CASE
The C.A.B. opinion in Mendel was issued on May 15, 1975, after submission of the original motion herein on April 22, 1975. This court had no knowledge of it when the decision was rendered herein on May 16, 1975, nor would it have changed that decision for the following reasons. The tenant’s complaint involved four issues, only one of which was that the renewal lease was not on the same terms and conditions as the prior lease. In its determination of this issue the C.A.B. stated:
"With regard to the tenant’s charge that the renewal lease recently proferred by the owner is different in form and in content from the expired lease, the Board notes that Section 60 of the Code requires an owner to offer the tenant a renewal lease at the current rent guidelines rate and otherwise on the same conditions as the expiring lease. This provision, read in *495 the light of the practice of the stabilized industry on the base date, and based on the hundreds of cases brought before this Board in the past five years of its administrative experience, may be complied with by use of a formal written lease (reiterating all of the lease conditions contained in the prior lease) or by use of a written extension agreement which merely refers to the prior lease and projects its clauses into the term of the renewal lease.
"Based on the facts in this case, the Board finds that the owner’s offer of a lease renewal with the conforming language of clause 35 was in effect an offer to extend the expired lease on the same terms and conditions. Therefore, within ten (10) days after a copy of this order is served upon it, the owner is directed to re-offer said lease renewal in accordance with this opinion except for one phrase of Clause 35, namely, '* * * as long as the Rent Stabilization Law is in effect and requires same * * *’, which is violative of Section 42b of the Code and is therefore unenforceable. The tenant shall have thirty (30) days from the date she is served with a copy of this order to accept such lease renewal offer and the lease shall not commence until the date on which a fully executed copy of said lease renewal is served upon tenant. The renewal lease period shall run prospectively for the full lease term elected by tenant. Because the owner has chosen this method of renewal, and for the beneñt of the tenant to assure that no confusion arises as to the speci&c language of the expired lease, the owner is directed to furnish tenant with a complete copy of the expired lease. ” (Emphasis added.)
A careful reading of that decision reveals that the C.A.B. apparently rejected the renewal lease because it contained the improper language quoted in the second paragraph (which is also present in the renewal lease offered herein) and directed the landlord to reoffer the lease with stated changes and to furnish the tenant with a complete copy of the expired lease.
Even if the two C.A.B. opinions were not distinguishable on the facts, as illustrated above, they would not be binding upon the court in the present proceeding.
rule 12, C.A.B.
Pursuant to rule 12 of the Rules of the Conciliation and Appeals Board (promulgated by the board on October 10, 1969, pursuant to the provisions of the Rent Stabilization Law of 1969, and as amended January 12, 1971) opinions of the *496 C.A.B. are rendered on a case by case basis and binding only between parties thereto and others who have had notice of the application and a reasonable opportunity to reply. There is no claim that the tenant herein was. so notified or participated in either of the above-cited applications. (The tenant in Mendel did not even live in Kips Bay Plaza although the building was evidently owned by the same landlord.)
JURISDICTION OF THIS COURT TO DECIDE ISSUES HEREIN
In any event, while it is always salutary to have the benefit of a prior determination by the C.A.B. on the facts of a particular case, this court can and must determine in the first instance whether the landlord has complied with all regulations which are conditions precedent to holdover summary proceedings. (See Swift v 130 West 57th Corp., 26 NY2d 714, mot for rearg den 26 NY2d 883.)
landlord’s claim for uniform leases
I note that the movant claims that the reason for use of the offered lease herein with the "conformance” or "savings” clause is that this landlord, as an owner of many apartments, desires to "have a uniform lease used in all its premises.”
This argument might have merit if the uniform renewal lease, in substance, contained the same conditions as the original lease, but that is not the case. There are numerous significant substantive differences seriously affecting and changing the tenant’s rights in the new uniform lease. (As noted, I have already determined that these differences render the lease a nullity under section 60 of the Code.) The landlord cannot, in the name of and quest for uniformity of lease, ignore basic rights. This would place form over substance and violates the spirit and letter of section 60 of the Code.
Furthermore, even if landlord’s goal of uniformity were thus accomplished, it would nevertheless have to maintain on file copies of the original leases which now have to be served along with extension agreements. (See Mendel, supra, p 2.) Certainly this would increase management costs and the potential for errors.
If uniformity be the landlord’s prime concern, consideration should be given to the suggestion of Justice Korn (Mehlman Mgt. Corp. v Meyers, NY LJ, June 14, 1974, p 17, col 6, Sup Ct, N.Y. County, supra) and the C.A.B. (Mendel, supra, p 2) *497 that a uniform simple extension agreement be employed. This has not been addressed by movant.
CONCLUSION
The key issue posed in the original decision remains as the crux of the arguments presented herein. The regulations require that a proper renewal lease be on the same conditions as the expired lease. Should the test be whether the renewal lease is so interpreted by an experienced real estate operator or a C.A.B. hearing officer? Or should it be whether the average layman-tenant can reasonably understand it to be on the same conditions?
Addressing the problem from another angle, must the tenant be placed in the position of interpreting the legal effect of all of the new paragraphs, rules and regulations? If the tenant determines that such new conditions are at variance with the expired lease, should the tenant then be charged with the burden of disregarding them but nevertheless treating the so-called "conformance” clause as a simple offer to extend?
In interpreting the rights and obligations of landlords and tenants under the Rent Stabilization Law of 1969 and the Code (especially when close technical questions are involved, as herein) consideration must be given to the relative positions of the parties and the underlying purposes of the regulation. In this era of evolving judicial concern for the rights of consumers, I believe that imposing such a burden upon tenants, who are indeed consumers, is unfair and unreasonable.
I find nothing submitted in the extensive motion papers herein to warrant any change in my original decision.