OPINION OF THE COURT
John A. Milano, J.
In this nonpayment proceeding, tenant moves, pursuant to section 60 of the Code of the Rent Stabilization Association of New York City, as amended, requesting that the terms and conditions of a three-year renewal lease, to be entered into on June 1, 1979, be rewritten in clear language and appropriately divided and captioned as required by section 5-702 of the General Obligations Law (Plain English Law). The attorney for the landlord opposes tenant’s application on the ground that section 5-702 of the General Obligations Law is not applicable to renewal leases of stabilized tenants since the pertinent provisions of the stabilization code require the renewal lease to be drawn upon the same terms and conditions as the expiring lease.
*694 ISSUE
Does the Plain English Law mandate that all renewal leases of stabilized tenants be rewritten in a clear and coherent manner using words with common and every day meanings and appropriately divided and captioned by its various sections?
Section 5-702 of the General Obligations Law states that:
"a. Every written agreement entered into after November first, nineteen hundred seventy-eight, for the lease of space to be occupied for residential purposes, or to which a consumer is a party and the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes must be:
"1. Written in a clear and coherent manner using words with common and every day meanings;
"2. Appropriately divided and captioned by its various sections.”
Section 60 of the rent stabilization code as amended by notice of approval of amendment No. 2 to the Amended Code of the Rent Stabilization Association of New York City by the Department of Housing Preservation and Development pursuant to section YY51-6.0 of the Administrative Code of the City of New York, and section 15 of chapter 576 of the Laws of 1974, dated April 2, 1979, published in the City Record on April 6, 1979, states: "Every owner shall notify the tenant in occupancy not more than 150 and not less than 120 days prior to the end of the tenant’s lease term, by mail, of such termination and offer to renew the lease at a rent not in excess of the stabilization rent permitted for each renewal lease and otherwise on the same conditions as the expiring lease, and shall give such tenant a period of 60 days to renew such lease and accept the offer; provided, however (a) that nothing herein shall shorten the 60 day period a tenant has in which to renew after notification by the owner of his options on renewal; and (b) upon the request of and with the consent of the tenant, the terms and conditions of a renewal lease entered into after November 1, 1978, may be rewritten in clear language and appropriately divided and captioned as required by Section 5-702 of the General Obligations Law, provided, however that no revision of the renewal lease shall deprive a tenant of a right or privilege under the RSL or this Code.”
Can section 60 of the rent stabilization code as amended, be *695 read together with section 5-702 of the General Obligations Law so that we can avoid statutory conflicts and still enforce and honor the legislative spirit and intent of both laws, while at the same time affording the landlord, judicial guidance in his good faith efforts to comply with "the law”?
It is clearly apparent from a reading of section 5-702 of the General Obligations Law that it was the intention of the Legislature to require that renewal leases of rent stabilized tenants be rewritten in plain English since no exceptions are made in regard to a written agreement entered into after November 1, 1978 for the lease of space to be occupied for residential purposes.
A violation of subdivision a of section 5-702 of the General Obligations Law does not render such agreement void or voidable nor shall it constitute a defense to any action or proceeding to enforce such agreement or a defense to any action or proceeding for breach of such agreement but subjects the lessor who fails to comply with said subdivision to a consumer who is a party to a written agreement governed by this subdivision to an amount equal to any actual damages sustained plus a penalty of $50. Class action penalties may not exceed $10,000 and in addition whenever the Attorney-General finds that there has been a violation of this section, he may proceed as provided in subdivision 12 of section 63 of the Executive Law by authorizing the Attorney-General to seek injunctions against and restitution from persistent violators of the law.
Section 60 of the rent stabilization code as amended (supra) provides that the landlord shall offer to renew the lease "and otherwise on the same conditions as the expiring lease” and that the tenant may receive a renewal lease written in plain English at the tenant’s request and with his consent (subd [b]; italics supplied).
It is thus also apparent that the said amended code gives the tenant the option to modify the requirement that the landlord offer the tenant a renewal lease in the same form as previously held by the tenant if the landlord desires to increase the rents.
In the case at bar, the tenant is exercising his option by requesting a renewal lease in plain English and the landlord is obligated to comply subject to the penalties and damages enumerated in section 5-702 of the General Obligations Law *696 since the Plain English Law is applicable to all renewal leases of stabilized tenants entered into after November 1, 1978.
Petitioner’s attorney refers to prior case law in taking the position that the landlord is not obligated to rewrite the renewal lease in language which is clear, understandable and coherent so that the average lay person may fully comprehend and understand its meaning. In the case of Newport Apts. Co. v Collins (NYLJ, May 16, 1979, p 13, col 3), the court held that renewal leases of stabilized tenants do not come under the mandate of the Plain English Law and that the landlord may offer a renewal lease on the exact terms and conditions as the expiring lease even where the tenants demand that the lease be in plain English. Though the offer by the landlord in Newport conforms with section 60 of the rent stabilization code (prior to April 6 amendment), the court in holding that section 5-702 of the General Obligations Law applies only to new leases and not renewal leases entered into after November 1, 1978, diminishes the effectiveness of the State law which is quite specific and unambiguous as to which agreements are to be affected by the plain English requirement. It is estimated that of the approximately 900,000 stabilized apartments in the City of New York, one third or about 300,000 leases each year come up for renewal. In view of the sheer weight of numbers, this court cannot conclude that the Legislature of our State did not consider nor were they unaware that a great proportion of residential leases in the City of New York pertained to stabilized tenants and that it was intended that they be the recipients of the protections afforded to them by the requirements of plain English.
The rationale of the court in Newport that landlords and tenants alike should not be put to the overwhelmingly difficult and possibly impossible tax of converting each and every clause of the lengthy expired lease to plain English and that tenants should not be put to the equally difficult task of determining whether the terms and conditions in the plain English lease are the same as the expired lease is specious because the benefits inuring to consumers, lessees and tenants far outweigh these inconveniences. And the fact is that plain English leases are being offered by landlords to tenants due in great measure to the efforts of Bench and Bar, community and business groups, real estate boards and the like.
And finally, the court in Newport cites Mehlman Mgt. Corp. v Meyers (51 AD2d 949) and Kips Bay Towers v Armstrong (82 Misc 2d 489, affd 85 Misc 2d 342) as authority for the *697 proposition that tenants should not be required to do a microscopic analysis of the new lease in order to determine whether the conditions offered are similar and that a lease with different conditions does not conform to the rent stabilization law and the code. These two cases are not in point because they precede the effective date of section 5-702 of the General Obligations Law and section 60 of the rent stabilization code as amended.
This court must conclude that rewriting a renewal lease in plain English of the very same terms and conditions contained in the prior lease does not violate the spirit of section 60 of the code as amended nor does it change or make different those terms and conditions nor was it the purpose or intent of section 5-702 of the General Obligations Law to do so.
But what if the tenant does not request or consent to a renewal lease in plain English? In obiter dictum fashion, this court suggests that the landlord may attach a rider, in plain English, to the prior lease extending same and providing that the identical terms and conditions of the said prior lease are carried over the period and term of lease requested by the tenant at the appropriate rent guidelines board increase.
The landlord would not be subject to damages or penalties because he would be acting in good faith and because the legal construction of reading section 5-702 of the General Obligations Law and section 60 of the code as amended, together would require that the tenant first exercise his option in requesting a plain English lease, before subjecting the landlord to any forfeitures and penalties under the Plain English Law. In this pragmatic and legal fashion it becomes possible to apply fairness and equity to both landlord and tenant and at the same time to avoid altering the intent of the Plain English Law, eliminate the confusion and doubt that has arisen and prevent the erosion of any rights granted to the tenant by the rent stabilization law and the code.
Accordingly, the court concludes and holds that the tenant is entitled to a plain English renewal lease and that the landlord is obligated to rewrite the terms and conditions of the prior lease in plain English under the mandate of section 5-702 of the General Obligations Law and section 60 of the rent stabilization code as read together subject to any of the penalties or damages for failure to comply as provided therein.