John A. Milano,
Hearing Officer. Petitioner brings a holdover proceeding against the respondents for the purpose of evicting them and obtaining possession of their respective housing accommodations because said accommodations are vacancy decontrolled and the leases of each of the respondents have expired; each of the respondents has held over from the *515 expiration date of their leases until the commencemnt of these proceedings and each of the respondents continues in possession without permission of the landlord.
This case comes before me under an agreed statement of facts.
The sole question to be determined by this court is whether the Emergency Tenant Protection Act passed by the New York State Legislature and signed into law by Governor Wilson on May 29, 1974 (L. 1974, ch. 576) and implemented by the New York City Council on June 20, 1974, is applicable to these respondents so as to prohibit eviction at the expiration of their leases. This case is of great import because approximately 400,000 vacancy decontrolled housing units in the City of New York similarly situated or soon to be as leases expire, are affected.
This court holds and decides that the enabling legislation called the Emergency Tenant Protection Act of 1974, as implemented by the Resolution of the City Council of the City of New York on or about June 20, 1974, covers all housing units presently vacancy decontrolled and all housing units to become vacancy decontrolled and in particular the housing units of the said respondents by placing all these housing units “ heretofore or hereafter decontrolled ’ ’ under the restrictive and protective provisions of the Rent Stabilization Law of 1969 (Local Laws, 1969, No. 16 of City of New York). The respondents herein are protected against eviction by the RSL as amended by chapter 576 of the Laws of 1974. The respondents must be offered renewal leases and pending such offer, with any increases after the pertinent guidelines are set by the Rent Guidelines Board, the initial legal regulated rent for said housing accommodations is the rent reserved in the last effective lease or other rental agreement. (In the instant case, the rent paid on a month to month basis after the expiration of the last effective lease.) Since the respondents’ accommodations became vacancy decontrolled prior to January 1, 1974, they may not avail themselves of the appeal procedures for those accommodations becoming vacant after January 1,1974, to wit — filing with the conciliation and appeals board within 90 days, for adjustment of the initial legal regulated rent on the allegation that such rent is in excess of the fair market rent (§ YY51-6.0.2, subd. b, par. 1).
. Prior to the passage and implementation of the Emergency Tenant Protection Act of 1974 (ETPA) all rent controlled or rent stabilized apartments which became vacant after July 1 1971, became decontrolled. These units were placed in a free rental market situation as to rent, terms and conditions of *516 renewal and in addition the landlord conld institute a holdover proceeding for eviction of the tenant and to regain possession of the housing unit without any legal grounds or justification short of the landlord’s demand for possession. This court was bound by the law to grant final judgment in favor of the landlord. The court retained discretion, under the law, to grant a stay of execution of the warrant for a period of time not exceeding six months. The landlord could not unilaterally increase the rent for these housing units but failing to obtain a bilateral agreement for such increase, could commence a holdover proceeding for possession. (Matter of Reimer v. Kaslov, 61 Misc 2d 960.) The new law potentially affects a million and a-half apartments in New York City and 130,000 in Nassau, Westchester and Rockland Counties. These are the only territorial jurisdictions in the State affected by the said law. Aside from New York City, five suburban communities have thus far passed resolutions incorporating said law and they include Yonkers, New Rochelle and the Town of Eastchester, all in Westchester; the Village of Great Neck Plaza in Nassau and Spring Valley in Rockland County. (See Administrative Code of City of New York, § YY51-6.0.1, subd. b, par. [1], as added by L. 1974, ch. 576, § 11.)
New York City, by resolution dated June 4, 1974 (Res. No. 276) and adopted on or about June 20, 1974, determined that a public emergency requiring rent regulation and control in the City of New York continues to exist and will continue to exist after May 29, 1974; that a supply of housing accommodations within the city continues to reflect a vacancy rate below 5% in all classes of housing; that such emergency necessitated the intervention of Federal, State and local government in order to prevent speculative, unwarranted and abnormal increases in rent; that there continues to exist an acute shortage of dwellings which creates a special hardship to persons and families occupying rental housing; that the legislation enacted in 1971 by the State of New York removing controls on housing accommodations as they become vacant has resulted in sharp increases in rent levels in many instances; that the existing and proposed cuts in Federal assistance to housing programs threaten a virtual end to the creation of new housing thus prolonging the present emergency; that unless residential rents and evictions continue to be regulated and controlled, disruptive practices and abnormal conditions will produce serious threats to the public health, safety and general welfare. The New York City Council resolved that the aforesaid emergency exists and *517 will continue to exist for all classes of housing accommodations within the City of New York, including but not limited to housing accommodations heretofore destabilized, heretofore or hereafter decontrolled, exempt, not subject to control, or exempted from regulation and control under the provisions of the local Emergency Housing Bent Control Law or the City Bent Stabilization Law. The resolution further states that the above findings are made pursuant to and in accordance with the provisions of the ETPA and for the purpose of implementing and establishing the local effective date for such ETPA in and for the City of New York. (July 1, 1974, Emergency Tenant Protection Act, § 6.)
It is thus very clear and unequivocal that the respondents’ vacancy decontrol housing accommodations come within the umbrella coverage of the ETPA. The exceptions, which do not apply to the said respondents, include housing accommodations subject to the Emergency Housing Bent Control Law other than housing accommodations subject to the New York City Bent Stabilization Law of 1969; buildings with fewer than six apartments or those completed or substantially rehabilitated on or after January 1, 1974; apartments in buildings operated for charitable purposes; apartments not occupied by the tenant in possession as his primary residence; apartments in government subsidized or assisted housing such as public housing or Mitchell Lama middle income housing; co-operatives and condominiums. (Emergency Tenant Protection Act, § 5.)
' All housing accommodations now covered by rent control or rent stabilization are unaffected by the 1974 act until they are vacated by their present occupants. In general, rent control covers units constructed prior to February 1,1947; stabilization covers units constructed after February 1, 1947 and prior to March 10, 1969. The 1974 act covers all units vacancy decontrolled and all units which were never previously controlled by reason of having been completed subsequent to March 10, 1969, except housing accommodations in a building containing fewer than six dwelling units and transient hotel and motel rooms. The 1974 act sets up a new coverage cutoff for new construction which is January 1, 1974. All units constructed after that date are free market.
Subdivision c of section 6 of ETPA provides that the initial legal regulated rents for housing accommodations in a city having a population of one million or more shall be the initial rent established pursuant to the New York City Bent Stabilization Law of 1969 as amended,
*518 Section 7 of ETPA amends section YY51-3.0 of the Rent Stabilization Law, added by Local Laws, 1969, No. 16 of the City of New York, by providing that said law shall apply to other housing accommodations made subject to this law pursuant to the ETPA of 1974:
Since New York City by resolution included vacancy decontrolled housing accommodations in the regulated categories, the said respondents are protected by the Rent Stabilization Law and all amendments to same.
Thus, the respondent tenants, so long as they continue to pay the rent to which the landlord is entitled, shall not be denied a renewal lease as prescribed by the Rent Stabilization Code nor shall they be removed from any dwelling unit by action to evict or to recover possession, by exclusion from possession or otherwise, except on one or more of the grounds specified in the said code or in the Real Property Actions and Proceedings Law. (See Rent Stabilization Code, § 50 and Rent Stabilization Law, § YY51-6.0, subd. c, par. [9].) Petitioner landlord argues that these proceedings were commenced prior to the effective date of the City Council Resolution (July 1, 1974) and therefore the rights of the parties hereto should be resolved on the prior applicable law. Petitioner cites Fifty Cent. Park West Corp. v. Bastien (60 Misc 2d 195 [Civ. Ct., N. Y. County]) and Gerard Towers Co. v. Moskovits (60 Misc 2d 57 [Civ. Ct., Queens County]).
In the Bastien case, the court held that the local law (Local Laws, 1969, No. 16 of City of New York-Rent Stabilization Law) was prospective in its operation and not retroactive and therefore could not affect the substantive rights which accrued prior thereto. In the Moshovits case, judgment of possession was awarded to the landlord prior to the enactment of the new law (Local Laws, 1969, No. 16, Rent Stabilization Law), and the tenant not entitled to a vacatur of same.
The above cases are distinguished. In these proceedings before me, the Governor signed the ETPA into law on May 29, 1974 before these proceedings were commenced. The resolution of the City Council dated June 4th (before commencement of these proceedings) was. passed on June 20, 1974 and said resolution determined and declared a public emergency requiring rent regulation and control and that said public emergency continued to exist after May 29, 1974. Further, judgment in these proceedings are being rendered after the effective date of the New York City resolution. By reason of the above, and the language and intent of the City Council, this court rules that the local law *519 (Res. 276) of the City Council is retroactive in effect to May 29, 1974 so that all proceedings commenced prior to July 1, 1974 and subsequent to May 29, 1974 come under the provisions of the new law. Accordingly, the petitions are dismissed with prejudice and judgment granted in favor of the respondents without costs in accordance with this opinion.