OPINION OF THE COURT
David B. Saxe, J.
Once upon a time a landlord had the right to refuse to renew a rent-stabilized tenant’s lease on the ground that the landlord was seeking in good faith to recover possession of the tenant’s apartment for his own personal use and occupancy or for the use and occupancy of his immediate family. This was accomplished pursuant to subdivision B of section 54 of the Code of the Rent Stabilization Association of New York City, Inc. (Rent Stabilization Code), which involves one exception to the general rule under section 60 of the code that the landlord must offer a stabilized tenant a renewal lease between 150 and 120 days prior to the expiration of the old lease. Subdivision B of section 54 then disappeared, ending the landlord’s right of refusal of a renewal lease on the ground of owner-occupancy. (L 1982, ch 555, § 6.) Although it has been generally agreed that the legislative repeal of this section was inadvertent, courts have held that recovery of premises for the landlord’s personal use is no longer a proper ground for refusing to *513 offer a renewal lease to a tenant. (See Kamm v Drake, 117 Misc 2d 658; Rubman v Waller, 118 Misc 2d 116.)
Realizing their error, subdivision B of section 54 has been reincarnated by the Legislature in a form similar to its predecessor. (See L 1983, ch 403, § 9.) Thus, the right to refuse renewal leases to tenants based on a good-faith intention to recover the premises for their personal use and occupation has been restored to landlords.
The new law became effective on June 30, 1983. No mention was made in it regarding retroactive application and it has been held that the law is not retroactive. (See Fox v 85th Estates Co., 119 Misc 2d 331.)
The respondent, Mr. Skovron, a rent-stabilized tenant, whose lease was due to expire on June 30, 1983, was notified by the petitioner between 150 and 120 days prior to such expiration that the landlord intended to recover the premises for his own personal use and occupation. Unbeknownst to the petitioner, subdivision B of section 54 was, at that point in time, nothing more than a memory. It did not exist due to its repeal in the previous year. (See L 1982, ch 555, § 6.)
The novel issue thus arises: What happens when a landlord refuses to offer a renewal lease during the period when no owner-occupancy law existed in light of the subsequent re-enactment of the owner-occupancy law (on June 30, 1983) under which the landlord now makes this application for relief.
It should be noted that Kamm v Drake (supra), and Rubman v Waller (supra) were decided after the legislative repeal of subdivision B of section 54 but before the reenactment of its replacement.
It has been held that á tenant has a vested right, in the absence of any applicable exceptions, to a renewal lease under section 60 of the Rent Stabilization Code at the time the right to be offered the renewal lease accrues. (See Matter of Fanelli v New York City Conciliation & Appeals Bd., 90 AD2d 756, affd 58 NY2d 952.) Thus, the crucial point in time for purposes of “interim” owner-occupancy cases is when the tenant’s right to be offered a renewal lease accrued rather than the expiration date of the lease. *514 In this case the tenant’s rights accrued, and hence vested, at a point in time when the landlord had no right to refuse to offer a renewal lease on the ground of owner-occupancy during the 120-150 day period prior to the expiration of the tenant’s lease. Thus, it is irrelevant that at the time the tenant’s lease actually expired the new law had become effective.
That being said, the landlord is obligated to offer the tenant a renewal lease pursuant to section 60 of the Rent Stabilization Code. The respondent’s motion to dismiss the petition is therefore granted.