FRANK MCDERMOTT, Appellant, v ARNALDO PINTO et al., Respondents.

First Department, April 24, 1984

**APPEARANCES OF COUNSEL**

*Jason S. Garber* of counsel (*Abrams Lerner Kisseloff & Kissin,* attorneys), for appellant.

*Robert A. Roth* for respondent.

**OPINION OF THE COURT**

MURPHY, P. J.

This holdover proceeding was submitted to Judge Dubinsky in the Housing Part on a stipulation of agreed facts. Petitioner McDermott owns the building located at 112 West 73rd Street; he is a member of the Rent Stabilization Association. Respondent Pinto entered into possession of apartment 12A in that building in or about 1974. Pinto resided in the apartment until January of 1982. He then sublet the apartment to respondent Bispo without obtain-

ing the permission of the petitioner. It was agreed that Pinto's tenancy was subject to the Rent Stabilization Law. However, neither McDermott nor Pinto could produce a lease. In the stipulation, the parties never mentioned whether or not a lease ever existed.

In his opinion dated November 19, 1982, Judge Dubinsky assumed that there was no written lease covering the tenancy. Nonetheless, he found that Pinto, a rent-stabilized tenant, was required to obtain the written consent of the landlord to sublease under then existing section 226-b of the Real Property Law, as amended. Judge Dubinsky concluded that Pinto had violated a substantial obligation of tenancy by subletting without first securing the landlord's consent. Final judgment of possession was awarded to the landlord but the tenant was given an opportunity to cure his breach.

In an order filed May 11, 1983, the Appellate Term reversed and awarded final judgment to the tenant and subtenant. That court, citing *Conrad v Third Sutton Realty Co.* (81 AD2d 50), stated that section 226-b of the Real Property Law, as amended, was ameliorative legislation adopted for the purpose of increasing, not diminishing, a tenant's right to sublet during a period of housing shortage. The court further found that, aside from section 226-b of the Real Property Law, as amended, a stabilized tenant remains free to exercise his common-law right to sublet where, as in this instance, that right has not been shown to have been abridged by means of a restrictive subletting provision contained in a lease (1 Rasch, NY Landlord & Tenant, Summary Proceedings, § 249, quoted in *Ilfin Co. v Shattan,* NYLJ, Nov. 22, 1982, p 13, col 6 [App Term, 1st Dept]).

After the Appellate Term's determination in this matter, sections 37 and 51 of the Emergency Tenant Protection Act (ETPA) became effective on June 30, 1983 (L 1983, ch 403, §§ 37, 51, 64). The "legislative findings", set forth in section 1, clearly indicate that those two sections of the ETPA were remedial. The second paragraph in those "legislative findings" is particularly noteworthy: "[t]he legislature further recognizes that severe disruption of the rental housing market is threatened as a result of the present state of the

law and judicial decisions in relation to the rights of tenants to sublet or to assign leases. The situation, in addition to creating widespread uncertainty on the part of all parties as to their rights, has permitted speculative and profiteering practices on the part of certain holders of apartment leases, leaving many subtenants without protection and removing many housing accommodations from the normal open housing market. Accordingly, the necessity for enactment of strengthened and clarified protections of the legitimate rights of the affected parties is hereby found to be required to protect the public interest."

As remedial legislation, sections 37 and 51 should be given retroactive effect (McKinney's Cons Laws of NY, Book 1, Statutes, § 54, subd a; cf. *Vance v Century Apts. Assoc.*, 61 NY2d 716). Section 37 repealed the then existing section 226-b, as amended, and replaced it with a new section 226-b which covers, *inter alia,* a tenant's right to sublease. Subdivision 7 of section 226-b specifies that the provisions thereof shall apply to "all actions and proceedings pending on the effective date of this section." The instant appeal should be considered a "pending proceeding" governed by section 37.

Subdivision 4 of section 226-b provides as follows: *"4. With respect to units covered by the emergency tenant protection act of nineteen seventy-four or the rent stabilization law of nineteen hundred sixty-nine the exercise of the rights granted by this section shall be subject to the applicable provisions of such laws. Nothing contained in this section two hundred twenty-six-b shall be deemed to affect the rights, if any, of any tenant subject to title Y of chapter 51 of the administrative code of the city of New York or the emergency housing rent control law."* (Emphasis added.) Essentially, subdivision 4 permits a rent-stabilized tenant to sublet under newly enacted section 226-b but subject to the applicable provisions of the Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 *et seq.,* RSL).

Section 51 of the ETPA amends subdivision c of section YY51-6.0 of the Administrative Code by adding a new paragraph (14) thereto. To the extent here relevant, this amendment of the RSL read as follows:

"c. A code shall not be approved hereunder unless it appears to the housing and development administration that such code * * *

*"(14) permits subletting of units subject to this law pursuant to section two hundred twenty-six-b of the real property law provided that (a) the rental charged to the subtenant does not exceed the stabilized rent plus a ten percent surcharge payable to the tenant if the unit sublet was furnished with the tenant's furniture; (b) the tenant can establish that at all times he has maintained the unit as his primary residence and intends to reoccupy it as such at the expiration of the sublease; (c) an owner may terminate the tenancy of a tenant who sublets or assigns contrary to the terms of this paragraph"*. (Emphasis added.)

Section 51 does not provide as to whether or not it should be applied to pending proceedings. Nonetheless, it must be remembered that the RSL, which section 51 amends, was mentioned in subdivision 4 of section 226-b. In order to effect the purpose of section 37, section 51 should also be given retroactive effect with one exception (§ YY51-6.0, subd c, par [14], cl [f]) not relevant to this discussion. Viewed differently, this court should follow the general rule of applying sections 37 and 51 because they constitute the law at the time of this appeal (4 NY Jur 2d, Appellate Review, § 400).

As was discussed above, the stipulation of agreed facts was drafted before the effective date of the ETPA. Thus, it is not surprising that the stipulation is silent in many critical areas relevant to a determination as to the lawful sublet of a rent-stabilized apartment under section YY51-6.0 (subd c, par [14]). For example, the stipulation does not cover the rent being paid by subtenant Bispo to tenant Pinto. Likewise, there is no mention as to whether Pinto ever intends to reoccupy the apartment at the termination of the sublease. Without information on those questions, a court may not make an informed judgment as to whether the tenant is subletting in compliance with section YY51-6.0 (subd c, par [14], cls [a], [b]).

It should be stressed that, prior to the determination of Judge Dubinsky, the landlord's attorney moved to examine both Pinto and Bispo. He sought information concerning (i)

the agreement, if any, under which Bispo entered into possession, (ii) Bispo's obligation to Pinto, including the payment of rent, (iii) the length of time Bispo intended to remain in the apartment, (iv) the date on which Pinto was expected to return.

In opposition to the motion, respondents' attorney stated that Pinto had returned to Brazil because his father had suffered a stroke that left him paralyzed and bedridden. The attorney alleged that Pinto would be required to stay in Brazil for at least one year. He further averred that Pinto would not be able to come to New York for either an examination or for a trial.

The landlord's motion was denied without explanation; he never appealed from that adverse order. In retrospect, it may now be said that an appeal should have been taken because the information sought is highly relevant to this pending appeal. Nonetheless, the papers submitted upon that disclosure motion are significant because they established that Pinto was in Brazil. At present, one may only speculate as to whether Pinto will ever return to this apartment.

Summarizing, the law was uncertain at the time of the Appellate Term's determination as to whether a rent-stabilized tenant without a lease (i) could sublet without restriction under the common law or (ii) was required to sublet under the existing section 226-b of the Real Property Law, as amended. In order to resolve this problem, the legislature enacted sections 37 and 51 of the ETPA. Each of these sections should now be applied to the present dispute.

This record, however, presents insufficient evidence upon which to make an informed determination under sections 37 and 51 of the ETPA. For example, it is not evident whether (i) Pinto is charging his subtenant an unlawful rent or (ii) Pinto ever intends to return to his apartment.

Moreover, in order to resolve this dispute intelligently, the parties must inform the courts of whether there was a lease and, if so, the terms of that lease relating to subletting. It is possible that a lease existed and that it permitted the tenant to sublet at will. Under such a circumstance, it was unnecessary for the tenant to seek permission from the

landlord to sublet under section 226-b of the Real Property Law, past or present. If it were assumed that a lease never existed, other questions are raised. The stipulation informs us that the tenancy is rent stabilized. However, it does not state how this rent-stabilized arrangement between the parties arose and whether it covered the tenant's right to sublet.

The stipulation is inadequate because it is silent on many operative and vital facts. The courts are not required to reach a result based upon pure speculation. Therefore, a new trial must be ordered. Before that trial, the parties may attempt to enter into a further stipulation of facts detailing their relationship. In the absence of a more detailed stipulation, this case must be tried. The trier of fact may then make findings as to the existence of the lease, its terms and other relevant matters bearing upon the parties' relationship. The tenant's right to sublet will be governed by sections 37 and 51 of the ETPA unless the tenant's right to sublet has been expanded by affirmative agreement of the parties.

Order of the Appellate Term, entered May 11, 1983, awarding final judgment to the tenant and subtenant should be reversed, on the law and the facts, and the matter should be remanded for a new trial under the ETPA, without costs. Prior to that new trial, the landlord should also be accorded the opportunity to examine both the tenant and the subtenant. If the tenant is unable to appear in New York City for his deposition, then the landlord should be permitted to examine him by alternative means in Brazil.

SILVERMAN, J. (concurring). It is not clear to me that the recent amendment to section 226-b of the Real Property Law takes away from a tenant his common-law right to assign or sublease his interest in the absence of a lease provision restricting that right. Of course, that is a wholly different question from the question whether the assignee or sublessee has a right to a renewal lease at the expiration of the term under rent stabilization, i.e., whether the assignor or sublessor can transfer his right to a renewal lease under rent stabilization. And perhaps just as puz-

zling is the question whether the assignor or sublessor validly retains the right of renewal.

However, the facts in this case are incomprehensible to me: I do not understand how it is possible to have a rent-stabilized tenant without a lease. Rent-stabilized tenants are supposed to be offered renewal leases for given terms. When does the term of this rent-stabilized tenant expire? Are we dealing with a month-to-month tenancy? It may even be that by now the tenant's term has expired or soon will, if the term can be ascertained. Further, if the "sublessee" is still in possession, is it a sublease or an assignment? And if the term has expired, are we not really concerned about the right of renewal?

In the circumstances, I agree that the case should be remanded for a fuller exploration of the facts.

Ross and ALEXANDER, JJ., concur with MURPHY, P. J.; SILVERMAN and FEIN, JJ., concur in a separate opinion by SILVERMAN, J.

Order, Appellate Term of the Supreme Court, First Department, entered on May 11, 1983, unanimously reversed, on the law and the facts, and the matter remanded for a new trial under the ETPA, without costs and without disbursements. Prior to that new trial, the landlord appellant may examine both the tenant and the subtenant. If the tenant is unable to appear in New York City for his deposition, then the landlord appellant may examine him by alternative means in Brazil.