OPINION OF THE COURT
John A. Milano, J.
ISSUE:
Is the classification of "20 years of residency in a rent controlled apartment” granting exemption from eviction for the personal use of the landlord, pursuant to Laws of 1984 (ch 234), so rationally related to a legitimate and compelling State interest, that the said statute will survive a constitutional challenge under the equal protection clauses of the Federal and State Constitutions?
*142 STATUTE:
On June 19, 1984, the Governor signed into law Assembly Bill 3586-B (L 1984, ch 234) which amends the Administrative Code of the City of New York § Y 51-6.0 (b) (1), the Emergency Housing Rent Control Law (L 1946, ch 274, § 5 [2] [a]) and the Emergency Tenant Protection Act of 1974 § 10 (a) (as added by L 1974, ch 576, §4), in relation to the eviction of senior citizins, long-term or disabled tenants on grounds of landlord’s personal use. The bill provides that the right of the landlord to seek in good faith to recover possession of a housing accommodation because of immediate and compelling necessity for his own personal use and occupancy or for the use and occupancy of his immediate family: "shall not apply where a member of the household lawfully occupying the housing accommodation is sixty-twó years of age or older, has been a tenant in a housing accommodation * * * for twenty years or more, or has an impairment which results from anatomical, physiological or psychological conditions, other than addiction to alcohol, gambling, or any controlled substance, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques, and which are expected to be permanent and which prevent the tenant from engaging in any substantial gainful employment” (L 1984, ch 234, §§ 1, 2). Section 4 of the bill states in pertinent part: "This act shall take effect immediately and shall apply to any tenant in possession at or after the time it takes effect, regardless of whether the landlord’s application for an order, refusal to renew a lease or refusal to extend or renew a tenancy took place before this act shall have taken effect.” (Emphasis added.)
FACTS:
The facts herein are not in dispute. Petitioner landlord was issued a certificate of eviction on December 5, 1983 for the use and occupancy of the subject apartment by the co-owners Alex and Irene Vitaliotis and their immediate family as their prime place of residence. The respondent tenant’s administrative appeal was denied by order issued on November 1, 1984. Subsequently, tenant’s CPLR article 78 proceeding was denied by judgment dated June 7, 1985 and entered in the office of the county clerk on June 14, 1985. May 18, 1985 represents the respondent tenant’s 20th anniversary of residency in the subject premises.
*143 CONTENTIONS OF PETITIONER:
Petitioner landlord contends that the recent amendments to the Administrative Code, the Emergency Housing Rent Control Law and the Emergency Tenant Protection Act (L 1984, ch 234) are not applicable to the facts in the instant proceeding. Petitioner submits that the “exemptions” are relevant only during the pendency of the administrative proceeding; that once the Rent Commissioner has ruled and that ruling becomes final, any issues concerning the statutory guidelines for granting evictions for owner occupancy purposes, are, by definition, resolved: That this position is in conformance with long-standing case law that a final administrative determination cannot be collaterally attacked in the context of a Civil Court proceeding. Petitioner further argues that while the Legislature may, consistent with constitutional mandates, declare a law to have a retroactive effect, the Legislature may not pass legislation which, because of its retroactive application, interferes with a vested right; that even without reaching this conclusion, retroactive application should not be judged strictly from the concept of vested rights but by a balancing of all the factors including considerations of fairness, reliance on preexisting law, the extent of retroactivity and the public interest to be served. Finally petitioner landlord asserts that the exemption of the tenant based on 20 years in occupancy does not find sanction in the legislative intent and in any event, the said exemption for 20-year live-in, rent-controlled tenants is violative of the equal protection clause.
ANALYSIS:
In his memorandum of law, petitioner contends that the case of Pierce v Hankins (126 Misc 2d 620 [Civ Ct, Kings County 1984]) prohibits respondent from defending this case based on the new law. To the contrary, Pierce supports respondent’s position. Respondent is not collaterally attacking the certificate of eviction granted by the Rent Commission in December 1983. At that time, the Rent Commission presumably acted within its authority in granting the certificate. During the pendency of respondent’s appeal, however, the law regarding the granting of certificates of eviction for owner occupancy purposes changed. It is this point that distinguishes the instant case from Pierce. In Pierce, the tenant sought to vacate a judgment of possession obtained by the landlord prior *144 to the enactment of the new law. The court in Pierce denied the tenant’s motion, holding that "the newly enacted amendment * * * is only retroactive to those situations where the Rent Commission’s ruling against the tenant may still be appealed.” (Pierce v Hankins, supra, at p 622.) Thus since the certificate of eviction in the present case was not final until June 7, 1985, almost one year from the effective date of the new law, respondent is entitled to rely upon the 1984 amendment and seek this court’s protection from eviction.
Petitioner’s argument that the 1984 amendment is being retroactively applied to deprive him of a "vested right” is also without merit. There is no constitutional right to evict a rent-controlled tenant. In fact, the purpose of the rent control and rent stabilization laws is to protect tenants from arbitrary evictions by landlords. The new amendment merely extends this protection a step further in the case of long-term tenants, granting this group the same protections already given to elderly and disabled tenants. In the instant case, petitioner never acquired any "vested” right to evict respondent. At the time the new law became effective, no final determination on the granting of the certificate of eviction had been made, since respondent was in the midst of an appeal from the initial determination of the Rent Commission. If the new law was being construed so as to undo a previously issued judgment of possession, petitioner’s argument might be stronger. (See, Budhu v Grosso, 125 Misc 2d 284 [1984].) There the court stated: "But the circumstances are different in the instant case. Here, State law (L 1984, ch 234, § 4) has made subdivision a of section 55 of the New York City Rent and Eviction Regulations (personal use by landlord) inapplicable to an eligible and statutorily protected senior citizen 'in possession at * * * the time’ of the effective date of the act, regardless of whether the landlord’s application for an order took place before this act shall have taken effect. (Emphasis added.) It is in this regard that this court may exercise its inherent power as mandated by the said State law to set aside the former determination of the Deputy Administrator and apply the present law to the facts at hand. The State of New York in reliance on its police power, passed this law designed to protect a special category of people occupying rent-controlled accommodations whose eviction would pose great physical and economic hardships to them. The new law supersedes the former administrative regulations and any determinations or others emanating therefrom. (People ex rel. Durham Realty *145 Corp. v La Fetra, supra; see, Francis Apts. v McKittrick, 104 Misc 2d 693)” (p 289). Furthermore, the instant case does not really turn on the question of retroactivity of the new law at all. The law became effective on June 19, 1984. Respondent did not celebrate his 20th anniversary in the subject premises until May 18, 1985. At that time, he became entitled to the protection of the 20-year residency law. Thus it is not a retroactive application of the law which is offending the petitioner, but merely an unfavorable change in the law. And see, Matter of Guerriera v Joy (64 NY2d 747), decided December 27, 1984 by the Court of Appeals. In this case, the order of the Appellate Division was reversed, with costs to petitioners, and the matter remitted to respondent for redetermination of petitioners’ application after considering the consequences of Laws of 1984 (ch 234). The Court of Appeals acknowledged that the respondent had conceded that the newly enacted amendments were applicable to the proceeding and that they prevented petitioners’ eviction inasmuch as they were in possession of their apartment on the statute’s effective date and that they met all three of the factors which now bar the eviction of rent-controlled tenants.
EQUAL PROTECTION CONSIDERATIONS AND LEGISLATIVE INTENT:
Where a statute is challenged as denying equal protection and a "fundamental interest” or a "suspect” classification is not involved, the standard by which the classification is measured to determine whether or not it will pass constitutional muster is the "reasonable basis” test. Where the " 'classification has some "reasonable basis,” it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality” ’ ” (Alevy v Downstate Med. Center, 39 NY2d 326, 332, quoting Dandridge v Williams, 397 US 471, 485). And if any conceivable state of facts will support the classification, said provisions will not be held violative of the equal protection clause. (Maresca v Cuomo, 64 NY2d 242, 250.) Legislative enactments carry an exceedingly strong presumption of constitutionality and while this presumption is rebuttable, one undertaking that task carries a heavy burden of demonstrating unconstitutionality beyond a reasonable doubt. (Lighthouse Shores, Inc. v Town of Islip, 41 NY2d 7, 11.) It is well settled that the State may establish regulations necessary to secure the general welfare of the community by the exercise of its police power although the rights of private property *146 may be curtailed. (People ex rel. Durham Realty Corp. v La Fetra, 230 NY 429 [1921, Pound, J.].) And where one class of tenants is afforded protection because all who seek homes cannot be provided therewith, such classification denies to no one the equal protection of the laws because the distinction which is made as to this class of tenants is real and rests on a substantial basis. (People v Beakes Dairy Co., 222 NY 416.) Equal protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences; that the distinction have some relevancy to the parties for which the classification is made and that the different treatments be not so disparate relative to the differences in classification as to be wholly arbitrary. (Walters v City of St. Louis, 347 US 231, 237.) In enacting the new law, the Legislature recognized that long-term tenants are particularly vulnerable to eviction by landlords who seek to remove apartments from their rent-controlled status and thereby obtain higher rents. (Governor’s Bill Jacket, A.3586-B, Budget Report on Bills, at 2 [1984].) For this reason alone, the legislative action in amending the law to protect long-term tenants in the same way prior laws protected similarly circumstanced tenants (i.e., elderly and disabled tenants) is clearly justified as resting on a rational basis. Furthermore, the Legislature went on to consider the devasting impact on both long-term residences and their community if these people were forced out after living in their homes for 20 years or more. Thus, it was both the identity of circumstances between elderly or disabled tenants and long-term residences and a balancing of the equities that led to the expansion of the law to embrace tenants such as the within respondent. By specifically finding that 20-year residents share the same problems as senior citizens and disabled tenants, the Legislature had no choice but to provide them the equal protection of the law in service of the public interest. Where the nature of the public interest to be served is salutary, necessary, not without precedent and well within the objective parameters of the police power, the law must be upheld. (Budhu v Grosso, supra.) Petitioner further argues that not all 20-year residents are elderly or living on fixed incomes and thus may be receiving a windfall under the new law. Although this assertion is not advanced by substantiated statistics, legislative history and memoranda notes that long-term tenants are often elderly, although not 62 years of age and have limited incomes. The fact that not every single resident of 20 years is in such *147 desparate straits is not relevant and does not justify striking a remedial law such as the one at issue.
CONCLUSION:
It is clear to this court that the new amendment (L 1984, ch 234) as it relates to extending protection to the additional third class of 20-year residents as stated in the Budget Report on Bills contained in the Governor’s Bill Jacket, imposes permissible and constitutionally acceptable restrictions on the right of landlords to evict a tenant from rent-controlled apartment. Accordingly, judgment in favor of respondent tenant dismissing the within summary holdover petition with prejudice.