*482 OPINION OF THE COURT
Alice Schlesinger, J.
Petitioner commenced this holdover proceeding seeking to recover possession of the subject apartment for his own personal use and occupancy. The apartment is rent-stabilized, and the parties agree that petitioner sent respondent the required notice of intention not to renew his lease during the "window period” 150 to 120 days before the lease expired. Respondent has nevertheless moved to dismiss on other grounds raising novel issues relating to the protections afforded senior citizens by the Omnibus Housing Act of 1983 (hereafter OHA; L 1983, ch 403).
The particular provision respondent relies on is OHA § 50, which amended Administrative Code of the City of New York § YY51-6.0 (c) (9) (b), commonly known as the Rent Stabilization Law (RSL). The amendment provides in relevant part that: "an owner shall not refuse to renew a lease except: * * * where he seeks to recover possession of one or more dwelling units for his own personal use and occupancy as his primary residence * * * provided however, that this subparagraph shall not apply where a tenant or the spouse of a tenant lawfully occupying the dwelling unit is sixty-two years of age or older * * * unless such owner offers to provide and if requested, provides an equivalent or superior housing accommodation at the same or lower stabilized rent in a closely proximate area.”
Respondent has presented documentary evidence and affidavits that his wife Marion Veale became 62 years old on February 18, 1986, three days before this proceeding was commenced. The affidavits further establish, and petitioner does not dispute, that Marion Veale has been living in the subject premises with respondent continuously since 1964. It is also undisputed that petitioner did not offer to provide respondent a comparable apartment before commencing this proceeding. Based on these facts, respondent urges this court to dismiss this proceeding because of petitioner’s failure to comply with the terms of OHA § 50.
Petitioner’s primary argument in opposition is that respondent is not entitled to the protections of OHA § 50 because his wife was not 62 years old during the "window period” 150 to 120 days before the lease expired. The window period in this case was the month of July 1985, as respondent’s lease expired November 30, 1985. Respondent’s wife became 62 in February 1986.
*483 While not citing any authority directly on point (indeed, it appears that none exists), petitioner seeks to analogize to the various cases which hold that a tenant’s right to a renewal lease "vests” during the window period unless the landlord timely notifies the tenant of his intent to refuse a renewal lease because he wants the apartment for his own use. (Matter of Fanelli v New York City Conciliation & Appeals Bd., 90 AD2d 756 [1st Dept 1982], affd 58 NY2d 952 [1983]; Goodman v Skovron, 121 Misc 2d 512 [Civ Ct, NY County 1983].) Petitioner argues that since these cases establish that "the crucial and controlling period of time for the purpose of 'owner-occupancy’ cases is the 120 to 150 day period prior to the expiration of the tenant’s lease,” then that same period of time should be controlling for determining the eligibility of a tenant for the senior citizen exemption in section 50.
This argument, while perhaps appealing at first glance, is in fact a perversion of the "vesting” concept which totally overlooks its genesis. The vesting concept stems from Code of the Rent Stabilization Association of New York City, Inc. § 60 (Rent Stabilization Code), which requires the landlord to offer the tenant a renewal lease during the window period before the lease expires. Rent Stabilization Code § 60 has been interpreted to also require the landlord to notify the tenant during the window period if he intends to refuse a renewal lease based on one of the exemptions in the code (such as primary residence or owner occupancy). (Golub v Frank, 65 NY2d 900 [1985]; Satraj Props. v Toral, NYLJ, Feb. 14, 1986, p 12, col 4 [App Term, 1st Dept].) Absent such notice of nonrenewal during the window period, the tenant’s right to a renewal lease "vests”, and the landlord is barred from commencing a holdover proceeding. (Supra.)
Consistently, and in reliance on Rent Stabilization Code § 60, the Fanelli court held that because the building had been owned by a corporation during the window period and a corporation could not recover an apartment for its own use, the tenant’s right to a renewal lease had accrued then and the subsequent individual landlord was barred from commencing an owner occupancy case. Similarly, the Goodman court held that because the owner occupancy provision had been inadvertently repealed during the window period, the tenant’s right to a renewal lease had accrued then and the landlord was barred from commencing an owner occupancy case despite the subsequent reenactment of the law.
*484 While these cases do establish that the window period is the "crucial and controlling” period for determining whether the tenant’s right to a renewal lease accrues under Rent Stabilization Code § 60, they do not support petitioner’s contention that the window period is the crucial time for determining the tenant’s eligibility for the senior citizen exemption in OHA § 50. The landlord has no "vested” right to evict a tenant and recover the apartment for his own use. (Vitaliotis v Mossesso, 130 Misc 2d 141, 144 [Civ Ct, Queens County 1985].) Nor has petitioner pointed to any section of the Rent Stabilization Law analogous to Rent Stabilization Code § 60 based on which such a right might accrue. On the contrary, the general purpose of the Rent Stabilization Law is to protect tenants from arbitrary eviction by landlords, and not to afford landlord’s inviolable rights. (Supra.)
Moreover, although the Rent Stabilization Law allows the landlord to refuse to renew a lease and seek the apartment for his own use, such refusal does not automatically "defeat” the tenant’s right or give the landlord the instant right to possession. The notice of intention not to renew the tenant’s lease is nothing more than a jurisdictional prerequisite for commencing an owner occupancy proceeding and a necessary element to obtaining a final judgment of possession. (See, Fisher v Velasquez, 126 Misc 2d 24, 26 [Civ Ct, Kings County 1984]; see also, Golub v Frank, supra; Satraj Props. v Toral, supra.) A tenant’s legal right to possession of the apartment continues under the Rent Stabilization Law at least until a court of competent jurisdiction determines that the landlord has proven a good-faith need to recover the premises for his own use. (Fisher v Velasquez, supra, at p 28; see also, Short v Graves, 109 Misc 2d 672 [App Term, 1st Dept 1981], affd 88 AD2d 796 [1982].)
OHA § 50 extended existing protections under the Rent Stabilization Law one step further to protect senior citizens and disabled persons from eviction when the landlord desires their apartment for his own use. While not providing absolute protection, the amendment requires the landlord to offer to provide the tenant a comparable apartment before commencing the eviction proceeding. The year after OHA § 50 was passed, other amendments were passed to extend essentially the same protection to rent-controlled senior citizens (L 1984, ch 234, § 2) and to senior citizens covered by the Emergency Tenant Protection Act of 1974 (ETPA; L 1984, ch 234, § 3).
Although no published decisions could be found which dis *485 cuss the rent-stabilization amendment at issue here, numerous decisions discuss the rent-control amendment. All these cases apply the amendment broadly to protect senior citizens lawfully in possession as of the date the amendment was passed, even if an administrative certificate of eviction had been issued against the tenant prior to the effective date of the amendment, so long as that certificate could still be appealed. (Guerriera v Joy, 64 NY2d 747 [1984]; Vitaliotis v Mossesso, supra; Fisher v Velasquez, supra; Budhu v Grosso, 125 Misc 2d 284 [Civ Ct, Queens County 1984].) In Budhu the amendment’s protection was extended to the tenant even though the amendment had not taken effect until after the certificate had been issued and after the holdover proceeding had been commenced.
In deciding to apply the senior citizen exemption retroactively in these cases, the various courts relied on section 4 of the 1984 act which added the exemption to the Rent Control Law and the ETPA (L 1984, ch 234). That section provides: "This act shall take effect immediately [June 19, 1984] and shall apply to any tenant in possession at or after the time it takes effect, regardless of whether the landlord’s application for an order, refusal to renew a lease or refusal to extend or renew a tenancy took place before this act shall have taken effect. ” (Emphasis added.)
Since no significant distinction exists between the ETPA and the Rent Stabilization Law, the above-quoted section 4 which applies to ETPA apartments should also be applied to rent-stabilized apartments like the subject premises. The sole purpose and effect of the ETPA, as implemented by the resolution of the City Council of the City of New York on June 20, 1974, was to place under the Rent Stabilization Law apartments which had been vacancy decontrolled or which were not previously controlled by reason of their having been completed after March 10, 1969. (Matter of Zeitlin v New York City Conciliation & Appeals Bd., 46 NY2d 992, 994 [1979]; Cornerstone Baptist Church v Rent Stabilization Assn., 55 AD2d 952, 953 [2d Dept 1977]; Perth Realty Co. v Dovoll, 79 Misc 2d 514, 515 [Civ Ct, NY County 1974].) Thus, since ETPA apartments are in fact rent-stabilized apartments, there is no legal or rational reason to treat ETPA tenants any differently than rent-stabilized tenants. Thus, section 4 should be applied equally to both groups.
Section 4 expressly provides that the senior citizen exemption shall apply to the tenant "regardless of whether the *486 landlord’s refusal to renew a lease, or refusal to extend or renew a tenancy took place before [the exemption] shall have taken effect.” By analogy, the senior citizen exemption should apply to respondent herein, regardless that the landlord refused to renew the lease before respondent’s spouse became 62.
Various other reasons exist for applying OHA § 50 "retroactively” pursuant to the mandate of section 4. OHA § 50 was part of a major legislative package for housing law reform. In conjunction with the enactment of section 50 and the other sections of the OHA, the Legislature declared "that the serious public emergency which led to the enactment of the existing laws regulating residential rents and evictions continues to exist; that extension of such laws is therefore required in the public interest, and that such laws would better serve the public interest if certain changes were made thereto”. (L 1983, ch 403 § 1, published under Real Property Law § 226-b, McKinney’s Cons Laws of NY, Book 49, 1985 Cum Ann Pocket Part.) Although no specific mention was made in this declaration about the senior citizen exemption, both Governor Cuomo in his approval memorandum and Senator Daly, one of the bill’s sponsors, recognized the senior citizen exemption as being one of the significant new protections afforded by the OHA. (1983 NY Legis Ann, at 177-178.) These various executive and legislative statements may fairly be construed as statements that the Legislature intended the senior citizen exemption to be applied broadly and retroactively.
Furthermore, it cannot be disputed that the OHA is remedial in nature, and a remedial statute should be liberally construed " 'to spread [its] beneficial result as widely as possible’ ”. (Amann v New York City Loft Bd., NYLJ, June 25, 1986, p 14, col 1 [Sup Ct, NY County], citing McKinney’s Cons Laws of NY, Book 1, Statutes § 321; Ancona v Metcalf, 120 Misc 2d 51 [Civ Ct, NY County 1983].) Various courts have applied other sections of the OHA retroactively based on the remedial nature of the OHA in general. (See, e.g., Matter of St. Vincent’s Hosp. & Med. Center v State Div. of Hous. & Community Renewal, 109 AD2d 711 [1st Dept 1985]; McDermott v Pinto, 101 AD2d 224 [1st Dept 1984].) OHA § 50 should be applied in the same fashion.
Petitioner suggests that a retroactive application of section 50 would allow a tenant who engages in dilatory tactics to drag a case out until he can benefit from the law. Unless it can be demonstrated that a tenant deliberately or negligently *487 delayed a case, he should be entitled to the retroactive benefit of an existing law. (Cf. Matter of St. Vincent’s Hosp. & Med. Center v State Div. of Hous. & Community Renewal, 109 AD2d, at p 712.) At any rate, petitioner has not alleged any facts or made any claim that respondent acted improperly to deliberately or negligently delay this case in any way. And it was the petitioner who waited to commence this action until several days after Mrs. Veale turned 62. Thus, respondent should not be deprived of the law’s protection.
The senior citizen exemption is a fair and well-balanced law. Although recognizing that a landlord is allowed to recover an apartment for his own personal use, the Legislature has also chosen to protect a special category of people for whom eviction would pose great physical and economic hardships. '' 'Eviction is a serious hardship for senior citizens, long term tenants, and the disabled. Moving often means harmful amounts of physical effort for senior citizens and may be nearly impossible for the disabled. In the present housing market, renting a new apartment can be financially devastating to a person on a retirement or limited income. Yet, these people are often singled out by landlords for eviction because they often have been in the apartment for many years and thus pay lower rents’ ”. (Budhu v Grasso, 125 Misc 2d, at p 287.)
It is also important to recognize that the amendment does not prevent a landlord from obtaining an apartment, but merely bars him from doing so at the expense of senior citizens, disabled persons and long-term residents. (Id.)
Finally, petitioner argues that respondent should not be protected by OHA § 50 because only his wife and not he is 62, and respondent’s wife is not a signatory to the lease. Relying on Sullivan v Brevard Assoc. (66 NY2d 489 [1985]), petitioner contends that since the spouse is not entitled to a renewal lease, the application of section 50 may not be based on her senior citizen status alone.
The court finds that Sullivan is inapposite as it applies only to cases in which the signatory to the lease has vacated the premises and the remaining person seeks a renewal lease. There is no dispute here that respondent continues to reside in the premises with his wife and that he desires a renewal lease. Moreover, section 50 explicitly extends its protection ''where a tenant or the spouse of a tenant lawfully occupying the dwelling unit is sixty-two years of age or older”. (Empha *488 sis added.) Since the tenant and his spouse are lawfully in possession under the Rent Stabilization Law and she is 62, section 50 applies to them.
For these reasons, respondent’s motion to dismiss this proceeding is granted. The case is restored to the Part 18 Trial Calendar for July 10, 1986 for a hearing before any Presiding Judge on the issue of attorneys’ fees.