Bentley Kassal, J.
The only issues presented in this action for rental damages (because of the tenant’s breach of a residential lease) are whether the landlord has a duty to mitigate its damages and, if so, what steps were taken to do so.
Defendant had been in possession of an apartment under a lease, expiring September 30, 1973. He defaulted by failing to pay rent for April, 1973 and voluntarily vacated the premises in May, 1973. The landlord rerented the apartment on July 1, 1973. The only rent in issue is for the month of June since tenant’s responsibility for rent for the months of April and May is not controverted.
Hornbook law to the contrary (see 2 Rasch, New York Landlord and Tenant [¡2d ed.], § 875), there is no longer good reason —if there ever was — why leases should be governed by rules different from those applying to contracts in general. The traditional and majority view is based upon the theory that the lessee becomes the owner of the premises for the term with the1 right to occupy or not, as he chooses, but with the independent obligation to pay rent, as the purchase price for the estate acquired. (Sancourt Realty Corp. v. Dowling, 220 App. Div. 660; Becar v. Flues, 64 N. Y. 518; 49 Am. Jur. 2d, Landlord and Tenant, § 621; Ann. 21 ALR 3d 534, 553, § 3 [i] and cases cited therein.)
However, since the decision of Judge J. Skelly Weight in Javins v. First Nat. Realty Corp. (428 F. 2d 1071), there has been a growing trend toward reading mutual contract obligations (such as warranties of habitability) into residential leases. (Amanuensis, Ltd. v. Brown, 65 Misc 2d 15; Morbeth Realty Corp. v. Rosenshine, 67 Misc 2d 325; Mannie Joseph, Inc. v. Stewart, 71 Misc 2d 160.)
As Justice Mabkowitz so pointedly stated in 57 E. 54 Realty Corp. v. Gay Nineties Realty Corp. (71 Misc 2d 353, 355; lv. to app. den. N. Y. L. J., Oct. 18,1972, p. 2, col. 1): “ Unfortunately, the law, ‘ as to leases is not a matter of logic in vacuo; it is a matter of history that has not forgotten Lord Coke ’ (Gardiner *692 v. Butler & Co., 245 U. S. 603, 605). Archaic in its origins, the effect of this background is still felt. The time has come to bring it up to dateto make the rules governing leases consistent with the rules governing contracts in all other fields * * They call for mutual obligations; they differ little, if at all, from other agreements.”
Should not the duty to mitigate, particularly by reletting, likewise be applied to all leases Í In my opinion it should.
Perhaps, in feudal times, there may have been some persuasive reason to allow a landlord to do nothing about abandoned premises but in these times, and especially in a city of this size with a residential vacancy rate under 2% (Talbot v. Romney, 321 F. Supp. 458, 470), it should not be permitted.
Numerous commentators have criticized the traditional rule which permits a landlord to stand idly by while damages accumulate in his favor (see Gruman v. Investors Diversified Servs., 247 Minn. 502; Wright v. Baumann, 239 Ore. 410) and a survey of other jurisdictions indicates that at least 12 other States now follow the rule requiring mitigation. (Ann. 21 ALR 3d 534, 541; 49 Am. Jur. 2d, Landlord and Tenant, § 621.)
In this State, some recent reported cases, particularly in the First Department, have resolved this issue apparently on the basis of the landlord’s failure to act in good faith. (Howard Stores Corp. v. Robison Rayon Co., 36 A D 2d 911, affg. 64 Misc 2d 913; Gracie Town House v. Weinstein, N. Y. L. J., March 14, 1973, p. 17, col. 4; New York Univ. v. Nieto, N. Y. L. J., April 13,1973, p. 18, col. 4; Sherman Taylor Corp. v. Cohen, N. Y. L. J., July 10, 1973, p. 10, col. 8.)
This issue should he met head-on by removing the long-established and deeply encrusted veneer from the real estate lease contract and showing it for what it is — a contract like any other contract.
This has been recognized by the National Conference of Commissioners on Uniform State Laws when it approved for enactment the Uniform Residential Landlord and Tenant Act.
Section 4.203 entitled “ Remedies for Absence, Non-Use and Abandonment ”, states: (c) If the tenant abandons the dwelling unit, the landlord shall make reasonable efforts to rent it at a fair rental. (Emphasis added.)
In almost all other instances, when there has been a breach of a contract, the law imposes a duty upon the nondefaulting party to make reasonable efforts to reduce or extinguish the injury (Losei Realty Corp. v. City of New York, 254 N. Y. 41). *693 Accordingly, applying this principle, the tenant will only be liable for such items of loss as the landlord could not have avoided by reasonable effort, without undue risk, expense or humiliation. (See concurring opn. of Cardozo, Ch. J. in McClelland v. Climax Hosiery Mills, 252 N. Y. 347, 354, rearg. den. 253 N. Y. 558; Losei Realty Corp. v. City of New York, supra; Restatement, Contracts, § 336.)
Where, as here, the landlord has proved a prima facie case, of default of lease, the tenant must then come forward to prove the landlord could have avoided or reduced the resulting damages. (Cf. opn. of Cardozo, Ch. J., in McClelland v. Climax Hosiery Mills, supra; Home Owners’ Loan Corp. v. Baldwin, 265 App. Div. 864; Greene v. Waggoner, 2 Hilt. 297; see, also, Ann. 134 A. L. R. 242, 249.)
In-this case, the only evidence presented regarding the landlord’s efforts to mitigate its damages was proof that the landlord did post a sign on the building premises when the tenant vacated.
While the landlord must use “ due diligence” to relet the premises (Fitch v. Armour, 27 Jones & Sp. 413; Smyth v. Hanig, 163 Misc. 59), this obligation may be satisfied in any of several ways, such as newspaper advertising, listings with real estate brokers, personal efforts to find new tenants, or, as here, by posting signs.
However, employing one or all of such methods is not necessarily determinative as, for example, where the landlord unreasonably refuses to relet the premises to the parties responding to the advertisements. Similarly, failure to take all such steps does not necessarily indicate a lack of due diligence.
The landlord herein proved that its efforts-to relet produced a new tenant within two months. It was, therefore, the tenant’s burden to prove that the landlord could have obtained a new tenant in a shorter period by using additional or other methods and that by so doing the damages would have been reduced.
This the tenant has not done, and, thus, I cannot find that the landlord has failed to meet its duty. (See Friedman v. Colonial Oil Co., 236 Iowa 140.)
Therefore, offsetting the $175 rental deposit retained by the landlord, judgment is awarded plaintiff in the amount of $350, with interest from April 1, 1973.