■ MED MAC REALTY Co., INC., Respondent, v SAUL LERNER et al., Appellants.—In an action, *inter alia,* to enjoin the defendants from interfering with the plaintiff tenant's attempted sublease and renovation of certain commercial property, the defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Suffolk County (Lama, J.), entered July 20, 1989, as (1) granted that branch of the plaintiff's motion which was for summary judgment on its first cause of action and ordered that the defendants cooperate with the plaintiff and execute any and all documents necessary to facilitate the contemplated sublease to the sublessee, Home Depot, Inc., (2) granted that branch of the plaintiff's motion which was for summary judgment on its second cause of action by issuing a permanent injunction to the plaintiff directing the defendants to refrain from interfering with its rights under the lease, (3) granted that branch of the plaintiff's motion which was for summary judgment on its fourth cause of action by issuing a permanent injunction to the plaintiff enjoining the defendants from interfering with the proposed sublease, and (4) denied their motion for summary judgment.

Ordered that the order is affirmed insofar as appealed from, with costs.

The plaintiff Med Mac Realty Co., Inc. is a domestic realty corporation and the tenant under the commercial lease of the premises, a one-story building located at the intersection of

Jericho Turnpike and Larkfield Road in Commack, New York. The lease was executed on September 1, 1965, between the defendants as "Landlords" and William Modell as "Tenant". The plaintiff is the tenant under an assignment of this lease from William Modell. The lease was modified on August 6, 1982, which modification acknowledged the plaintiff's interest in the leasehold and released William Modell from liability under the lease. The lease is scheduled to expire in 2008 unless the plaintiff exercises its right to extend it for another 21 years.

Pursuant to the tenth article of the lease, the tenant is permitted to sublet the entire premises without the landlord's consent if enumerated conditions have been met. The forty-third article of the lease states, in relevant part: "Notwithstanding the provisions of Article TENTH hereof, the Tenant shall have the right without the consent of the Landlord to sublease or otherwise rent space in the buildings and demised premises, which sublettings and occupancy agreements shall place no obligations to such subtenant or occupant on the part of the Landlord herein". The twelfth article provides, in relevant part: "Tenant may at any time or times during the term, at its own cost, make any alterations * * * except structural changes". However, subdivision (e) of this article provides: "If the Tenant shall hereafter erect in compliance with subdivisions (a), (b), (c) and (d) of this Article TWELFTH, a facility, area or department for (1) the installation of automobile accessories; (2) the sale of home improvement materials and supplies; or (3) a garden and outdoor living center, such installations shall not be deemed to be structural changes within the meaning of this Article".

The lease also provides that all buildings, alterations and improvements shall revert to the landlord at the end of the lease term and that the tenant shall not commit waste or injury upon the premises. The 1982 amendment has no bearing on any of the original provisions except that the twelfth article was amended to provide that the tenant is not to erect any additional buildings on the premises.

By agreement dated October 31, 1988, the plaintiff and several other parties executed an agreement with Home Depot, Inc. (hereinafter Home Depot). Home Depot is a public corporation listed on the New York Stock Exchange. It operates approximately 100 home improvement centers in several States with annual sales of approximately $2,000,000,000. Under the terms of this agreement, the plaintiff agreed to sublet 111,484 square feet of the leasehold to Home Depot

which would operate a home improvement center on a portion of the subleased premises. The remainder of the building would be occupied by an existing store (30,150 square feet) and a sporting goods outlet (10,000 square feet) to be operated by an entity affiliated with the plaintiff.

On November 14, 1988, after learning of this agreement, the defendants wrote to the parties stating that this proposed subletting to Home Depot was a violation of the lease and that any subletting would be deemed a default of the lease. On March 7, 1989, the plaintiff moved for a *Yellowstone* injunction *(First Natl. Stores v Yellowstone Shopping Center*, 21 NY2d 630). After the application for a temporary restraining order was granted, the defendants withdrew their notice of default. The defendants then refused to sign applications for building and demolition permits required by the Town of Huntington for the premises to be renovated for use as a home improvement center. They also wrote to the Town of Huntington informing the town that any application for permission to make alterations or additions to the premises required their written consent, and that no consent would be forthcoming.

Following the service of the summons and complaint and the defendants' answer, the defendants moved, *inter alia,* for summary judgment on their counterclaim which asserted that the plaintiff was prohibited by the terms of the lease from entering into the sublease with Home Depot. The plaintiff moved for summary judgment on the first five causes of action contained in its complaint.

The plaintiff submitted an affidavit from an architect responsible for the architectural plans and specifications for the alterations which confirmed that all alterations would be in conformity with the lease and "if any plans or drawings call for alterations prohibited by the Lease, [the architect would] amend the plans so as to bring them into conformity with the provisions of the Lease. * * * The integrity of the existing structure shall remain unchanged". Additionally, the plaintiff asserted that once Home Depot was permitted to proceed with its plans after the necessary permits were executed, alterations could be completed within six months and, after opening, the store would employ at least 240 persons with an annual payroll of approximately $5,000,000.

The Supreme Court granted the plaintiff summary judgment on its first, second, and fourth causes of action, which demanded injunctive relief. However, finding that it could not

"determine, on the papers before it, what the motives of defendants were in refusing to cooperate with the plaintiff", it denied summary judgment with respect to the third cause of action to recover damages for intentional interference with contractual relations and the fifth cause of action to recover damages for intentional interference with business relations.

At the outset, we note that the proposed sublease is expressly permitted by the forty-third article of the lease which refers to the rental of space to subtenants of the building. It is well established that when construing a contract, the court's goal is to avoid an interpretation which would leave the contractual clauses meaningless *(see, Corhill Corp. v S. D. Plants, Inc.,* 9 NY2d 595). Since the tenth article of the lease specifically deals with the assignment or sublease of the entire premises and the forty-third article begins with the words "Notwithstanding the provisions of Article [10]", a fair reading of the lease supports the plaintiff's contention that the parties intended that the tenant enjoy substantial freedom to sublease portions of the premises.

Since the lease allows the tenant to sublet portions of the property without the landlord's consent (a fact conceded by the defendants) and there is no language in the forty-third article which supports the defendants' position that the subleasing must be limited to franchises or concessions, we find that the sublease to Home Depot was permitted. Further, the defendants' argument that the language of the forty-third article does not impose any obligation upon them to execute permits necessary to facilitate Home Depot's sublease ignores the fact that in all contracts there is a covenant of fair dealing and good faith *(see, Van Valkenburgh, Nooger & Neville v Hayden Publ. Co.,* 30 NY2d 34) and that a landlord is under a duty to refrain from unreasonably obstructing the tenant's use of the premises *(see, Times Sq. Stores Corp. v Bernice Realty Co.,* 141 AD2d 536).

The clear and unambiguous provisions of the lease indicate that the proposed alterations by Home Depot are permitted. The twelfth article states, in relevant part: "Tenant may * * * make any alterations * * * except structural changes * * * provided * * * [i]f the Tenant shall hereafter erect * * * a facility, area or department for * * * the sale of home improvement materials and supplies * * * such installations shall not be deemed to be structural changes within the meaning of this Article". The explicit language of this article permits the plaintiff to make alterations, even those which might otherwise be deemed structural, in furtherance of a

home improvement materials "facility, area or department". As it is undisputed that Home Depot intends to operate a retail outlet for the sale of home improvement materials, we find that the proposed alterations are expressly permitted by the lease.

We do not find any support in the lease for the defendants' argument that the proposed operation exceeds the size for a "facility, area or department". Home Depot intends to open a facility for the sale of retail home improvement supplies. Although the defendant makes much of the fact that this sublease will consume a major portion of the building, the tenth article of the lease permits the tenant, without the landlord's consent, to sublease the entire premises. This provision negates the proposition that it was the intent of the parties that the premises be operated as a series of small department stores. We find nothing within the express terms of the lease which limits the size of the area which may be subject to the alterations. Further, we note that the terms "facility, area or department" are listed in the disjunctive rather than the conjunctive and we perceive that the common meaning of these terms includes the proposed home improvement facility.

While the lease does contain a provision banning waste, since the alterations herein are expressly permitted, they cannot be deemed waste (see, 1 Rasch, New York Landlord and Tenant—Summary Proceedings § 15:13 [3d ed]). Further, the argument relating to waste is negated by the unrefuted affidavit of the plaintiff's architect which states that the building will remain structurally intact and that if any plans are not in conformity with the lease they will be revised.

In view of the foregoing, we find that the Supreme Court properly granted the plaintiffs summary judgment with respect to the causes of action for injunctive relief. Since the defendants refused to assist the plaintiff in exercising its right to sublease the property, the Supreme Court properly directed the defendants to execute the necessary documents, and enjoined them from interfering with the business relationship between the plaintiff and its sublessee. Such interference would constitute a breach of the duty of fair dealing arising from the lease between the plaintiff and the defendants.

With respect to the remaining causes of action, the Supreme Court properly held that there are issues of fact which preclude the granting of summary judgment. Mangano, J. P., Thompson, Eiber and Balletta, JJ., concur.