OPINION OF THE COURT
David Goldstein, J.
This is a motion by plaintiff for summary judgment, pursuant to CPLR 3212, in this action to recover $18,200 rent for the two-year period, up until July 1989, after defendant vacated the premises. At issue is whether a commercial landlord should have a duty to mitigate its loss, or whether he *38 may leave the premises vacant and proceed against the former tenant for accrued rent.
FACTS
Plaintiff is the owner and lessor of 110-20 73rd Road, Forest Hills, New York. On July 21, 1983, the parties entered into a lease, by which apartment 2-J was rented to defendant for use as a professional medical office, for a two-year term, commencing August 1, 1983. The lease also afforded to the tenant options to renew, the first August 1, 1985 through July 31, 1987, and the second August 1, 1987 through July 31, 1989. The original term carried a monthly rental of $900 and the renewal terms, $1,100 and $1,300, respectively.
Defendant remained throughout the original term and exercised an option to renew for an additional two-year period. On February 25, 1987, plaintiff wrote to advise Dr. Dondysh that the lease would be expiring July 31, 1987 and would not be renewed. Defendant replied on March 10, 1987: "This is a mistake. My real contract with yu [sic] is up to July 31, 1989. * * * This office can be vacated only in 1989.” This obviously referred to the option afforded to defendant in terms of renewal. Subsequently, on May 9, 1988, during the second option period, defendant advised plaintiff that his office would be relocated "in June/May” and requested a return of his security deposit. Plaintiff responded on May 11, 1988, that he would hold defendant responsible under the lease for the entire renewal period, until July 31,1989.
This action was commenced in August 1989, to recover $18,200 rent due for the period from June 1988 through July 1989, after defendant vacated the premises. The answer, in addition to a general denial, interposed a counterclaim to recover $60,000, which had been expended by defendant to convert the premises into a professional office. The responsive pleading alleged that relocation of the medical practice was rendered necessary when defendant learned that plaintiff did not have a certificate of occupancy and that the apartment was not zoned for use as a professional office.
In opposition to this motion, defendant claims that he was fraudulently induced to enter into the lease by plaintiff’s representations that the building and the apartment had the necessary zoning and permits to be used as a medical office, which it did not have. This, according to defendant, compelled him to relocate his practice. He also claims that he vacated *39 the apartment in June 1988, advising plaintiff as to the reason and surrendered the apartment and the keys to the landlord, who accepted the surrender.
Plainly, these are factual matters which must await the trial and cannot be finally resolved upon motion for summary judgment. If the absence of zoning or permits prevented the use of the premises for the express purpose stated in the lease, this could afford a defense on the merits, notwithstanding that defendant occupied the space for a long period prior thereto. Nor may the court determine, on the conflicting affidavits offered on this record, whether there was a surrender of the space and an acceptance by the landlord, sufficient to release the tenant from further responsibility. This is an issue which must await the trier of the facts and is inappropriate for disposition upon motion for summary judgment.
As has been repeatedly held, the function of the court upon motion for summary judgment is issue-finding, not issue-determination (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404; Esteve v Abad, 271 App Div 725, 727). The remedy is a drastic one and should not be granted where there is any doubt as to the existence of a triable issue (Moskowitz v Garlock, 23 AD2d 943, 944) or where the issue is even arguable (Barrett v Jacobs, 255 NY 520, 522), since it serves to deprive a party of his day in court. Relief should be granted only where no genuine, triable issue of fact exists (see, Werfel v Zivonstenska Banka, 287 NY 91).
DUTY TO MITIGATE
In my view, there is a further factual issue here which must await trial, namely, whether plaintiff, as a commercial landlord, attempted to mitigate its damages by seeking a new tenant after defendant vacated the space. The actions taken by the landlord, in terms of a good-faith effort to rerent the vacated premises, involve factual issues to be determined at trial.
It has been the established law in this State that a landlord was under no duty to mitigate damages by attempting to relet the premises upon the abandonment of the space by the original tenant (Becar v Flues, 64 NY 518 [1876]; Sancourt Realty Corp. v Dowling, 220 App Div 660 [1927]; Centurian Dev. v Kenford Co., 60 AD2d 96, appeal dismissed 45 NY2d 772; see generally, Annotation, 21 ALR3d 534, 553-555). The rule, applicable to both residential and commercial tenancies, *40 had its origin in common-law principles, which, in recognition of property rules from feudal times, viewed a lease as a conveyance of an estate in land for a particular period, i.e., a transfer of a property interest in the owner’s estate for a stated term, with an independent obligation to pay rent as the purchase price (Becar v Flues, supra; Sancourt Realty Corp. v Dowling, supra). As a result, at common law, a tenant who vacated was considered to have abandoned his estate, not the landlord’s, thus negating any duty on the part of the landlord to mitigate the loss.
The more recent cases to have considered the issue have taken into account that a lease, especially residential, is more than a mere conveyance of a vested real estate interest, and amounts to a contractual relationship with mutual obligations (Paragon Indus. v Williams, 122 Misc 2d 628, 629 [App Term, 2d Dept]; Forty Exch. Co. v Cohen, 125 Misc 2d 475, 486-487; Parkwood Realty Co. v Marcano, 77 Misc 2d 690, 692). One of these obligations, incident to any contractual dealing, is the obligation imposed upon a nondefaulting party to mitigate any loss following a breach of the contact.
Thus, in Parkwood Realty Co. v Marcano (supra, at 691) Judge Kassal (now Associate Justice, App Div, 1st Dept) struck new ground in holding that a residential landlord had a duty to mitigate its damages, recognizing that "there is no longer good reason — if there ever was — why leases should be governed by rules different from those applying to contracts in general.” In rejecting the traditional rule which permitted a landlord to sit idly by while damages accumulated, this court held that, by imposing a duty to mitigate, "the tenant will only be liable for such items of loss as the landlord could not have avoided by reasonable effort, without undue risk, expense or humiliation” (supra, at 693). In so doing, it applied general contract principles to require the nondefaulting party to make reasonable effort to reduce or extinguish the injury, observing (supra, at 692): "This issue should be met head-on by removing the long-established and deeply encrusted veneer from the real estate lease contract and showing it for what it is — a contract like any other contract.”
Similarly, in Kershner v Rubin (NYLJ, May 4, 1983, at 11, col 1), the New York City Civil Court followed the progressive approach in Parkwood Realty (supra), and held that a residential landlord was obliged to attempt to rerent the apartment after the tenant had abandoned the space during the term of the lease, observing in part: "In recent years the courts have *41 applied the law of contracts to residential and commercial leases in recognition of the fact that a modern lease is in reality a contract, encompassing mutual obligations and promises — services for money (rent) — the same as other agreements” (supra, at 11, col 2; emphasis added).
In 437 Madison Ave. Assocs. v A. T. Kearney, Inc. (120 Misc 2d 944), involving a commercial tenancy, the court imposed upon the landlord a duty to mitigate, relying upon Kershner v Rubin (supra), although the latter related to a tenant’s abandonment of residential space.
During the period following the determination in Parkwood Realty (supra), the Appellate Term, Second Department, recognized the growing trend by which courts have sought to modernize traditional concepts of landlord-tenant law in terms of obligating a landlord to attempt to relet the premises after the tenant has vacated and before the expiration of the lease (see, Lefrak v Mandalay Leasing Co., 93 Misc 2d 632; Birchwood Assocs. v Stern, 88 Misc 2d 937). In both Lefrak and Birchwood, dealing with residential leases, the court found it unnecessary to pass upon the mitigation issue since the proof at trial established that the landlord did make reasonable and diligent effort to rerent the premises.
In 1983, in Paragon Indus. v Williams (supra, at 628), also a residential case, the Appellate Term, Second Department, confronted the question directly and held: "In this action by a landlord for rents accruing after a tenant’s abandonment of the premises, the issue is whether it was incumbent upon the landlord to prove as part of its direct case that it attempted to mitigate damages by reletting the premises. We hold that it was.”
In reliance primarily upon the reasoning in Parkwood Realty (supra), the Appellate Term rejected outright the harsh common-law rule in favor of a more equitable standard, which imposed upon the landlord an affirmative duty to make reasonable efforts to relet the premises at a fair rental, i.e., a duty to mitigate its loss.
Goldman v Orange County Ch., N. Y. State Assn. for Retarded Children (121 AD2d 683) is instructive. That case, as far as appears, concerned commercial space abandoned by the tenant after the landlord had exercised an option to renew. The action was brought to recover unpaid rent for a three-year period after the exercise of the option. In terms of the duty to mitigate, the Appellate Division, Second Department *42 (supra, at 685), noted that whether or not there was such an obligation was "subject to question” (citing, by way of comparison, Becar v Flues, 64 NY 518, supra; and Centurion Dev. v Kenford Co., 60 AD2d 96, supra; with Paragon Indus. v Williams, 122 Misc 2d 628, supra; and Parkwood Realty Co. v Marcano, 77 Misc 2d 690, supra), but declined to pass upon the issue since the proof established that the landlord had made "reasonable and diligent efforts to rerent the premises”.
In Wallis v Falken-Smith (136 AD2d 506, Iv dismissed 72 NY2d 840), the Appellate Division, First Department, declined to rule on the issue whether the prior rule, which had excluded residential landlords from the usual contractual obligation to mitigate, remained a viable principle, since the tenant failed to sustain her burden of proving that the landlord could have avoided or reduced the resulting loss of rental income. In doing so, it recognized that "[t]he law, at most, requires no more than reasonable efforts by the landlord” (136 AD2d, at 507). In terms of the burden of proof, which is clearly on the tenant, see also Parkwood Realty Co. v Marcano (supra, at 693).
Notwithstanding the First Department’s apparent hesitancy in Wallis (supra), to directly come to grips with the mitigation issue, the doctrine has been indirectly followed in that Department, in both residential and commercial cases, albeit disguised in terms of whether the landlord acted in good faith. Thus, as early as 1971, in Howard Stores Corp. v Robison Rayon Co. (36 AD2d 911), involving a commercial lease, the court, citing the existence of another action pending for unpaid rent during the remainder of the lease, held that its determination was "without prejudice to consideration by the trial court of the question of whether the landlord acted in good faith in failing to rerent the vacated premises.” Despite the appellation attached, this is in apparent recognition of the landlord’s duty to mitigate.
Similarly, in Syndicate Bldg. Corp. v Lorber (128 AD2d 381), also a commercial case, while the court’s memorandum referred to the prevailing rule, which imposed a duty to mitigate upon residential landlords, and the contrary rule applicable in the context of commercial leases, nevertheless, the order remanded the matter for a new trial "limited to the issues of whether plaintiff-appellant [landlord] acted in good faith, and whether there are mitigating circumstances”.
To impose upon the landlord, whether in a residential or *43 commercial context, an obligation of good faith in its dealings with its tenants is not only fair but quite natural. It flows logically from the implied covenant, which exists in any contract, of fair dealing and good faith (see, Van Valkenburgh, Nooger & Neville v Hayden Publ. Co., 30 NY2d 34, 45; La Shelle Co. v Armstrong Co., 263 NY 79; Underhill v Schenck, 238 NY 7; Brassil v Maryland Cas. Co., 210 NY 235; Med Mac Realty Co. v Lerner, 154 AD2d 656). That there exists a mitigation doctrine in the guise of "good faith” was cited in Parkwood Realty Co. v Marcano (supra, at 692), the court there electing to proceed in a more direct fashion, recognizing the inherent fairness, in terms of contract law, of the rule which imposes a duty to mitigate damages.
If these and other cases establish a "trend”, it is difficult to discern the precise path to be followed. The reported decisions, as a whole, offer no real direction for the present and no precedent as guidance for the future. Some Civil Court Judges have held, on an individual, case-by-case basis, that there should be a duty to mitigate. At least one has expressed the view that the Court of Appeals may do so when it next considers the issue (Forty Exch. Co. v Cohen, 125 Misc 2d 475, 487, supra). The Appellate Term, Second Department, has imposed the duty in residential cases (Paragon Indus, v Williams, 122 Misc 2d 628, supra). The Appellate Division, First Department, declined to decide whether the duty existed in Wallis (136 AD2d 506, supra), although, nine months earlier, that same court cited the applicability of the mitigation doctrine to residential landlords in Syndicate Bldg. (supra).
The commercial cases reflect different inconsistencies. The Appellate Division, Second Department, noted that the existence of such a duty was "subject to question” but declined to rule on the issue directly since the landlord had mitigated its loss (Goldman v Orange County Ch., N. Y. State Assn. for Retarded Children, 121 AD2d 683, supra). The First Department, although it refused to recognize a duty to mitigate in commercial leases, nevertheless, adopted what is in actuality a mitigation standard, by directing a trial on whether the landlord acted in good faith in not reletting the space after the tenant vacated (Syndicate Bldg. Corp. v Lorber, supra; Howard Stores Corp. v Robison Rayon Co., supra). To all intents and purposes, this raises in issue mitigation, albeit under a different name.
In my view, no useful purpose is served by strict adherence to ancient legal principles, which have no vitality or validity *44 under current standards. As was observed by Judge Saxe in Forty Exch. Co. v Cohen (supra, at 488): "When a rule 'is out of tune with the life about us, at variance with modern-day needs and with concepts of justice and fair dealing’, it should be discarded. (Bing v Thunig, 2 NY2d 656, 667 [per Fuld, J.].) Stare decisis 'was intended, not to effect a "petrifying rigidity,” but to assure the justice that flows from certainty and stability. If, instead, adherence to precedent offers not justice but unfairness * * * it loses its right to survive, and no principle constrains us to follow it.’ (Supra, p 667; see, also, People v Hobson, 39 NY2d 479.)”
All legal principles must adapt to current conditions and it is the responsibility of our courts to fashion appropriate changes where needed. The majesty of our system of jurisprudence is its flexibility, even in the face of established precedent, which, with some frequency, must be updated to effect the ends of justice (see, e.g., Basso v Miller, 40 NY2d 233 [responsibility of landowner to persons, regardless of status under prior law as invitee, licensee or trespasser]; Schechter v Klanfer, 28 NY2d 228 [lesser burden of proof applied to amnesiac]; Spano v Perini Corp., 25 NY2d 11 [absolute liability for blasting]; Gelbman v Gelbman, 23 NY2d 434 [abolition of defense of intrafamily tort immunity for nonwillful torts]; Millington v Southeastern Elevator Co., 22 NY2d 498 [wife’s cause of action for loss of consortium]; Gallagher v St. Raymond’s R. C. Church, 21 NY2d 554 [owner’s obligation to illuminate exterior when building is open to the public]; Battalla v State of New York, 10 NY2d 237 [recovery for physical or emotional injury, incurred by fright, negligently induced]).
In Gallagher v St. Raymond’s R. C. Church (supra, 21 NY2d, at 558), Judge Keating, writing for the unanimous Court of Appeals, recognized "that the common law of this State is not an anachronism, but is a living law which responds to the surging reality of changed conditions. We, therefore, do not hesitate to purify our law of what has, with the passage of time, become a most anamolous exception to the general common-law rule of due care.”
Similarly, in his dissent in Thornton v Roosevelt Hosp. (47 NY2d 780, 784), Judge Fuchsberg aptly observed: "It is no impermissible slight to the rule of precedent to remember that, as with decisional law generally, what is Judge-made can be and, in appropriate cases, should be Judge-unmade. Stare decisis is a malleable rule, not one bound by bands of steel. As *45 Roscoe Pound put it, 'the law would break if it could not bend’. Indeed, in recent years, we have given recognition to the fact that the dynamic nature of personal injury law calls upon us to 'readily re-examine established precedent to achieve ,the ends of justice in a more modern context’ (People v Hobson, 39 NY2d 479, 489)”.
In my view, such a reevaluation is warranted here in relation to the imposition upon the landlord of a duty to mitigate after the tenant has vacated the premises and prior to expiration of the lease. Plainly, the rationale underlying the common-law rule has no validity today. As noted, the no-mitigation rule had its origin in feudal times, when a lease was a conveyance of an interest in real property, with the rental the payment for the transfer. Thus, when a tenant abandoned the leasehold, he was viewed as having vacated his estate. Inasmuch as rent was a fixed obligation and absolute, it had to be paid regardless, and there was no need to require that the landlord mitigate its loss.
Today, however, leases are not considered as mere conveyances for a stated period. Like other agreements, they carry with them mutual obligations and responsibilities, one of which impliedly requires the nondefaulting party to take reasonable steps to reduce or extinguish its loss. This is a usual incident to any contract. No valid reason appears, other than blind adherence to the past, why leases, both residential and commercial, should not be governed by such principles applicable to contracts in general. Essentially, this is the reasoning which impelled the determination in Parkwood Realty Co. v Marcano (77 Misc 2d 690, supra). As was aptly stated by the Appellate Term, First Department, in 57 E. 54 Realty Corp. v Gay Nineties Realty Corp. (71 Misc 2d 353, 355):
"Archaic in its origins, the effect of this background is still felt. The time has come to bring it up to date; to make the rules governing leases consistent with the rules governing contracts in all other fields. * * *
"Leases are no longer conveyances of space for a stated period; today they partake of service contracts as much as of rental contracts. They call for mutual obligations; they differ little, if at all, from other agreements. In modern times,-rules of law applicable to other agreements should also apply to leases.”
I am in full agreement with that rationale, which, in my view, applies to both residential and commercial leases. In *46 either situation, it is inherently unjust, unreasonable and wasteful for a landlord to be in a position where it may sit idly by, with no obligation to minimize its loss through reasonable efforts to rerent the space. Blind adherence to antiquated principles which permit such inherent inequity to continue should not be countenanced. The no-mitigation rule, whether in the context of residential or commercial litigation, has clearly outlived its usefulness. It is a harsh, archaic rule, out of step with current conditions and concepts of justice and, in my view, should be retired to its rightful place in history.
Nor need this court remain inactive in anticipation of remedial legislation or corrective action by our appellate courts. In terms of possible legislation, since the no-mitigation rule is of common-law origin, the primary responsibility is with the courts, not the Legislature. Moreover, although, in 1985, the Law Revision Commission recommended passage of a new statute, Real Property Law § 235-g, which was to create a statutory duty to mitigate as to both residential and commercial leases (1985 NY Legis Doc No. 65 [F], [G], reprinted at 1985 McKinney’s Session Laws of NY, at 2743-2764), the legislation did not proceed through both Houses. This, however, does not prevent or mitigate against judicial action to remove the inequity. Further, bearing in mind the number of times our appellate courts have declined to confront the issue head on, deferral in favor of future appellate review may not afford a real measure of relief.
Although I am aware that, at least in the First Department, there has been imposed upon the landlord an obligation to exercise good faith, such an indirect approach is, in my view, far less preferable than the direct, "head-on” approach advocated in Parkwood Realty Co. v Marcano (supra, at 692). The rationale of Parkwood Realty and other cases is equally applicable to commercial leases to impose upon the landlord a duty to mitigate its loss.
As a result, I conclude that a landlord, whether residential or commercial, is under an affirmative duty to make reasonable efforts to reduce or extinguish its loss, by attempting to relet the premises after the tenant has vacated and before expiration of the lease. Whether the landlord in this case did act to mitigate the loss is a further factual issue, inappropriate for determination upon motion for summary judgment. Neither side has presented the type of proof needed to pass upon the issue as a matter of law.
*47 While I am mindful that this determination is a departure from age-old precedent, it is within the proper function of our courts to act where necessary to reshape the law in light of current conditions and standards. This is especially so where, as here, the former rule is not only archaic but is also manifestly unfair and unjust. Under the circumstances, its retention as a viable legal principle is both unwise and unwarranted.
Accordingly, upon the foregoing, plaintiffs motion for summary judgment is denied in all respects.