OPINION OF THE COURT
W. Denis Donovan, J.
In this breach of lease action, plaintiff landlord moves for summary judgment and defendant tenant cross-moves for dismissal. It is ordered that this motion is granted and the cross motion is denied.
*650 Nearing expiration of a prior two-year lease of a house owned by plaintiff, defendant renewed with a similar two-year lease for the period January 1, 1995 to December 31, 1996. The form of the lease, as was the prior, is a standard Blumberg house lease form (number A54) stating that the annual basic rent is $19,200 per year which may be paid in monthly installments for the convenience of the tenant only, automatically recalled to the annual amount (or balance of amount) upon default. Paragraph 19D of the lease, dealing with defaults and remedies, allows but does not require the landlord to re-enter and re-rent to the net credit of the unpaid portion of rents and cost of re-letting.
Defendant failed to pay, even in part, the November and December 1995 and January 1996 rent installments. After due notice of default and acceleration was served on January 10, 1996, this action was filed on January 31, 1996, the summons and complaint served on February 20th and issue was actually joined by defendant on February 28, 1996. This motion by plaintiff followed shortly thereafter.
Upon court inquiry defendant’s counsel advised the court some 40 days after the full submission of this motion that defendant vacated the leasehold on March 11, 1996, some 11 days before the submission. Plaintiff’s counsel asserts that only upon this recent advice has she or her client become aware of defendant’s departure and had no inkling heretofore that defendant was not continuing his occupancy without paying the rent.
In his answering papers and cross motion, defendant alleges that certain questions of law and fact as raised by the three affirmative defenses set forth in his answer prevent any award of summary judgment. The first of these defenses presented an issue as to proper service; the court, however, held a traverse hearing on July 31, 1996, found service to have been proper and a separate order is being entered thereon.
The second affirmative defense of failure to state a cause of action is stricken both as improper to an affirmative defense and substantively, upon review of the complaint, the causes as pleaded are proper and sufficient.
The third and last affirmative defense, apparently questioning the voidability of paragraph 3 of the lease dealing with the right of the landlord in the event of the tenant’s default to "accelerate” the balance of monthly payments is, as a matter of law, not properly cognizable. Under the circumstances shown, an acceleration clause of the nature agreed to here is neither a *651 penalty nor forfeiture when the tenant defaults on a material term of the lease such as rent payment and hence is not against public policy (see, Fifty States Mtg. Corp. v Pioneer Auto Parks, 46 NY2d 573). Nor will equity intervene where the breach is unexplained, unexcused; no earlier effort to cure was made and defendant, after enjoying five months of unpaid occupancy, secretly abandons the premises without surrender of keys or any notice to the landlord.
Therefore, summary judgment is awarded to plaintiff.
As and for damages, the plaintiff is correct in demanding the three months of agreed late charges at $100 per month for the unpaid installments for November and December 1995 and January 1996; hence $300 in additional late charges is allowed, any greater right to same cutoff by plaintiff’s notice of acceleration served January 10, 1996 (Federal Natl. Mtge. Assn. v Mebane, 208 AD2d 892, citing Centerbank v D’Assaro, 158 Misc 2d 92).
The more troublesome aspect concerning damages is the defendant’s claim in the motion papers that plaintiff is obliged to mitigate rental damages. In just such an instance, however, and when in further fact the breach was occasioned by the tenant’s death even prior to the agreed occupancy, the Court of Appeals in 1895 in Becar v Flues (64 NY 518) held that the landlord had no duty to mitigate.
In the past 100 years, this rule has been often-repeated and applied in cases of breached commercial leases while in contrast, some courts have collaterally and steadily taken a "more modern or just” view that, in line with the generalized mitigation obligation in contract law, tenant breach and abandonment of a residential lease should create a mitigation duty on the part of the landlord (see, Syndicate Bldg. Corp. v Lorber, 128 AD2d 381; Paragon Indus. v Williams, 122 Misc 2d 628 [App Term, 2d Dept 1983]; Parkwood Realty Corp. v Marcano, 77 Misc 2d 690; but see, Birchwood Assn. v Stern, 86 Misc 2d 607, affd 88 Misc 2d 937 [App Term, 2d Dept 1976]).
The Court of Appeals has now revisited the mitigation issue in Holy Props, v Cole Prods. (87 NY2d 130 [1995]). The tenant in that action breached its commercial lease and abandoned the premises. The Court of Appeals distinguished all leases, without any stated qualification, from other contracts generally subject to mitigation obligation on the theory that leases have always historically represented and still represent a present transfer of an estate in real property and are not executory in any nature and sense. Therefore, the Court theorized *652 that, even if the landlord obtains eviction for nonpayment, the rent obligation continues if the lease so allows and the landlord is not obligated to mitigate; rather she may either (a) do. nothing and sue for the rent still due, or (b) may re-let on her own account effectuating a release of the tenant, or (c) may re-let for the tenant’s account allocating new receipts first toward re-letting costs and then against the rent owed. Here, the lease terms themselves provide for the third option, but only if the landlord chooses to make that effort.
Some commentators have chosen not to view Holy Props, (supra) as having an effect on residential leases because of its factual setting, i.e., a commercial lease was at issue, and further because the Court did not expressly reject the recent body of case law imposing a mitigation obligation in residential lease disputes. The commentators find difficulty, however, having to concede that the Court found its support in Holy Props. in its 100-year-old holding in Becar (supra), a residential lease action and further, that the Court emphasized the policy need for certainty in long-settled precedents (Estis and Robbins, Landlord and Tenant Law, Commercial Leases — Court Affirms Landlord Has No Duty to Mitigate Damages, NYLJ, Feb. 7, 1996, at 5, col 2). Another commentator, however, has reported and digested Holy Props. ’ lack of mitigation obligation without any attempted qualification based on character of the lease (Siegel, 436 NY St L Dig, at 3 [Apr. 1996]), just as the Court of Appeals itself made no analytical distinction. One legal reporter has taken just notice of the possible irrational consequences of attempting to continue the mitigation distinction between the two basic types of leases following the Holy Props. holdings (Schwartz, No-Mitigation Rule Still in Effect, NYLJ, June 10, 1996, at SI, col 3).
Called upon here by defendant to continue such a distinction, the court is, however, compelled to apply Holy Props, (supra) as it more plainly reads, without distinction as to the lack of mitigation obligation based on the character of the lease itself. It does so not only based upon the obvious approval by the Court of Appeals of its own Becar v Flues residential lease holding and not only because the high Court itself makes no such distinction between the two types of leases — a succinct one to set forth — but also because the stated legal theory underpinning the holding, i.e., that leases, unlike contracts, constitute present transfers of estates solidifying the obligation to pay the full rent, would be vastly contradicted by attempting to continue any such distinction. The strong language of the Court in recognizing the need for clear and established pre *653 cedent sufficient to permit reliance by those who are free to alter their obligations with differing terms, cannot be overcome, in this court’s view, by any comely appeal to modernity. Hence, the court concludes that this plaintiff landlord is under no duty to mitigate prospective damages which will therefore be measured by both the past due and the accelerated payments. The court has examined the one reported decision on this issue following the Holy Props, holding. That decision continued the mitigation obligation in residential leases solely because the Court of Appeals was dealing with a commercial lease and didn’t explicitly reject or overturn residential lease mitigation case law (see, Whitehouse Estates v Post, NYLJ, Apr. 10, 1996, at 26, col 4 [Civ Ct, NY County, Padilla, J.]); respectfully, this court is unpersuaded by that reasoning.
Some problems arise, however, when the landlord, as here, sues during the balance of the original lease period. She sued while tenant still occupied the house and, indeed, only after submission of this motion was defendant’s abandonment of the premises in March 1996 made known. She thus now has all three options available to her as so recently delineated by the Court of Appeals. She may sit and do nothing and be awarded the rent, late charges to January and any additional rent, all as provided for in the lease, or she may choose to re-let for her own account and thus release the tenant prospectively, or she may re-let for the tenant’s account as allowed in the lease itself and credit him with any net receipts received to the end of the lease term in December 1996.
The possible differences in measuring damages within these choices on her part outstanding warrant the following: upon presentation of a copy of this decision and order to the clerk along with proper form of judgment, plaintiff may enter a judgment against defendant in the amount of $22,700 representing past nonpayments, late fees to January 1996 and accelerated payments to the end of the lease term with interest to accrue from January 1,1996, which judgment however shall be subject to enforcement up to $13,100 plus allocated interest, that sum being the sum due to June 1996 before abandonment was made known; the balance shall be enforceable after December 31, 1996 with credit to defendant allowed for any net re-letting receipts, as described above, should plaintiff re-let for his benefit, provided, however, that keys are surrendered by defendant within 10 days of the entry date of this decision and order, upon failure of which the immediately enforceable portion of the above judgment shall continue to increase monthly by *654 $1,600, the monthly rent rate, plus allocable interest. Plaintiff, of course, may choose to release defendant with respect to payments otherwise due, after surrender of keys with appropriate adjustment made based on the monthly rent rate. In all instances, any balance of security on deposit with plaintiff, after inspection of the premises, will serve as a credit against the judgment amount.
While attorney’s fees for a re-letting are allowed for in the lease, no legal fees for enforcement is provided for in the lease or rider; therefore attorney’s fees are not presently allowed. Likewise, no items of added rent were requested or demonstrated and are therefore not allowed. Should any of the personalty identified and included in the lease not be returned in reasonable condition, less normal wear and tear, plaintiff may seek relief thereon from the security deposit or in Yonkers City Court.