29 Holding Corp. v Diaz (2004 NY Slip Op 24103)

29 Holding Corp. v Diaz

2004 NY Slip Op 24103 [3 Misc 3d 808]

March 31, 2004

Supreme Court, Bronx County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, August 4, 2004

[*1]
29 Holding Corp., Plaintiff,
v
Lizabeth Diaz et al., Defendants.
Supreme Court, Bronx County, March 31, 2004

APPEARANCES OF COUNSEL

Marshall E. Bloomfield, Bronx, for plaintiff. Ramirez Torres Martinez, LLP, Bronx (Alberto Torres of counsel), for Reinaldo Colon, defendant.

{**3 Misc 3d at 809} OPINION OF THE COURT

Paul A. Victor, J. 
Plaintiff moves for summary judgment against defendant Reinaldo Colon, the guarantor of a residential lease. No other defendants have appeared in this action.

Issue Presented

Does this court have the authority to depart from First Department, Appellate Term, precedent which, based on an antiquated Court of Appeals case, holds that residential landlords have no duty to mitigate damages?[FN1]

Although most persons appear to believe that a lessor has a duty to mitigate in a residential setting but not a commercial setting, this view is an uninformed and oversimplified construction of the law.

Facts

Plaintiff is the owner of premises located at 707 East 187th Street in Bronx County. In 1992, defendant Lizabeth Diaz entered into a residential lease for an apartment at the premises.
Defendant Colon, who was apparently a tenant at the premises, and defendants Miguel Lopez and Luis R. Acosta executed a guarantee of Ms. Diaz' lease. The guarantee provided:[*2]"The undersigned Guarantor guarantees to Owner the strict performance and observation by Tenant of all the agreements, provisions and rules in the attached Lease. Guarantor agrees to waive all notices when Tenant is not paying rent or not observing and complying with all of the provisions of the attached Lease. Guarantor agrees to be equally liable with tenant so that Owner may sue Guarantor directly without first suing tenant. The Guarantor further agrees that his guarantee shall remain in full force and effect even if the lease is renewed, changed or extended in any way and even if Owner has to make a claim against Guarantor. Owner and Guarantor agree to waive trial by {**3 Misc 3d at 810}jury in any action, proceeding or counterclaim brought against the other on any matters concerning the attached Lease or the Guaranty." (Emphasis added.)
Ms. Diaz renewed her lease in 1993 and 1995, ostensibly without the knowledge or participation of the defendant. The 1995 renewal was for a two-year period commencing May 1, 1996 and expiring April 30, 1998. It is not disputed that Lizabeth Diaz vacated the premises in May 1997, and failed to pay the rental owed from May 1997 to April 1998, for a total of 12 months' rent in the amount of $6,963.84.
Plaintiff seeks to recover the rent owed from the named tenant, as well as from defendant Colon and the other guarantors. In his verified answer, defendant Colon raised the defenses of improper service; lack of jurisdiction; failure to state a cause of action; lack of "wrongdoing" on the part of defendant; that the complaint fails to establish a claim against the defendant; that the complaint is conclusory; that the plaintiff is responsible at least for the damages sustained; that the plaintiff failed to mitigate damages; and that premises were not registered with the Division of Housing and Community Renewal.[FN2]

Discussion

Summary Judgment Issues

The court's function on this motion for summary judgment is issue finding rather than issue determination. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].) Since summary judgment is a drastic remedy, it should not be granted where there is any doubt as to the existence of a triable issue. (Rotuba Extruders v Ceppos, 46 NY2d 223 [1978].) Thus, when the existence of an issue of fact is even arguable or debatable, summary judgment should be denied. (Stone v Goodson, 8 NY2d 8 [1960]; Sillman v Twentieth Century-Fox Film Corp., supra.)

Uncompensated Guarantors

Contrary to defendant's arguments, the plaintiff has made a prima facie case based on documentary evidence. Defendant challenges the plaintiff's proof but does not deny executing the guarantee, which is annexed to the 1992 lease.
The court is mindful that the specter of a guarantee extending indefinitely into the future appears to place an undue and unconscionable burden on an uncompensated guarantor. In{**3 Misc 3d at 811} Trump Mgt. v Tuberman (163 Misc 2d 921, 922 [Civ Ct 1995]), the court recognized these same concerns, stating: "Research has failed to reveal any decisions concerning the continuing obligations of a guarantor of an initial rent-stabilized lease for renewal leases to which the guarantor is not a party. Since [*3]the Rent Stabilization Law requires a landlord to continue to offer renewal leases, adoption of plaintiff's theory in this case would require a finding that once a person guarantees an initial rent-stabilized lease, they are liable indefinitely for all renewal leases, even in the absence of an expressed agreement to be held liable." However, in keeping with the maxim that the obligations of a guarantee should be strictly construed, the Trump court concluded that the guarantee in that case should not be extended indefinitely into the future, because nothing in the language of the guarantee provided for continuing liability on the part of the guarantors.
Unlike the situation presented in Trump (supra), the guarantee in this case is extremely broadly worded, and applies not only to renewals, but also if the lease is "changed or extended in any way." The guarantee by its terms extended to renewed leases, and plaintiff has established that the lease was in fact renewed in writing. (Compare 665-75 Eleventh Ave. Realty Corp. v Schlanger, 265 AD2d 270 [1st Dept 1999].) This court is thus constrained to hold that the guarantee extends to renewal leases, in accordance with the explicit terms of the guarantee. The court notes that the defendant could have ameliorated his situation, and was not fated to adhere to the terms of the guarantee for the life of the leasehold, no matter how long extended into the future, since the defendant, as an uncompensated guarantor, "may revoke and end [his] future liability by reasonable notice to the principal." (See, e.g., Levine v Segal, 256 AD2d 199, 200 [1st Dept 1998] [citations omitted].)
The court has examined the other defenses raised by the defendant in opposition to the motion for summary judgment, and, except for the issue of mitigation of damages, finds them to be without merit.

Mitigation of Damages

It is not clear from the papers submitted if the landlord actually held the premises vacant for the period from May 1997 to April 1998, but the landlord does claim an entitlement to rent for this entire period. The landlord argues specifically that it has no duty to mitigate damages.
The issue is one which appears to have generated considerable confusion and somewhat inconsistent determinations (see{**3 Misc 3d at 812} Estis and Robbins, Mitigating Damages: Landlord's Duty May Depend on Where You Live, NYLJ, Dec. 5, 2001, at 5, col 2). The seminal case in this area is Becar v Flues (64 NY 518 [1876]), a case involving an oral residential leasehold for an additional one-year term which was to commence May 1. The tenant died in April, and his family gave notice that they would not retain the leasehold. The defendant argued that because the contract was executory, plaintiff was obligated to mitigate damages. The Court held, to the contrary, that the contract was not executory, and that the defendant was responsible for the rent of the housemeaning the full amount of the agreed rent, not subject to mitigation based on an offer by a prospective tenant to lease the premises for an amount only slightly less than the agreed rental.
The rule in Becar was subject to criticism, and in fact rejected by Judge Bentley Kassal who held that a residential landlord had a duty to mitigate its damages, recognizing that "there is no longer good reasonif there ever waswhy leases should be governed by rules different from those[*4] applying to contracts in general." (Parkwood Realty Co. v Marcano, 77 Misc 2d 690, 691 [Civ Ct 1974]; accord, Rubin v Dondysh, 146 Misc 2d 37 [Civ Ct, Queens County 1989, Goldstein, J.].) This "progressive" trend which recognized a duty to mitigate in the residential context gained momentum until it appeared to gain acceptance as the prevailing rule. The Appellate Term, Second Department, recognized the duty to mitigate in a residential case in Paragon Indus. v Williams (122 Misc 2d 628 [App Term, 2d Dept 1983]), in which the court held (at 629-630): "While this court has previously remarked upon these decisions and this trend of 'modernizing traditional concepts of landlord and tenant law', it has not previously had occasion to pass upon the issue of a landlord's duty to mitigate. We now hold that a landlord has such a duty. As the Court of Appeals, which apparently has not spoken on the issue since 1895, long ago noted, the rule that a landlord may sit idly by and collect his rents while making no attempt to relet the premises often imposes harsh results, as where a tenant under a multiyear lease is forced by circumstances to abandon the premises with several years remaining on the lease (see Becar v Flues, supra, p 520). Indeed, both courts and commentators have recognized that the contrary rule is more just." (Emphasis added and citations omitted.)
Consequently, in Syndicate Bldg. Corp. v Lorber (128 AD2d 381, 381-382 [1st Dept 1987]), the First Department noted in dicta {**3 Misc 3d at 813}in a commercial case, in which it found that the commercial landlord had no duty to mitigate, that "[w]e conclude that the trial court erred in relying upon plaintiff's failure to mitigate damages. Although courts in this State have recently imposed the duty to mitigate damages upon residential landlords, there are no such holdings and the contrary is true, in the context of commercial leases." (Citations omitted.)
This "modernizing" trend was thrown into a sudden tailspin in 1995 when the Court of Appeals, although dealing with a written lease for commercial premises, cited the Becar case with approval. Thus, in Holy Props. v Cole Prods. (87 NY2d 130 [1995]), the Court of Appeals construed the terms of a commercial lease which expressly provided that the landlord had no duty to mitigate by reletting the premises. The defendant tenant raised the affirmative defense that plaintiff had failed to mitigate damages by deliberately failing to offer the leased premises to prospective replacement tenants. Supreme Court entered judgment for plaintiff for the entire amount of rent and held that plaintiff landlord had no duty to mitigate damages. The Court of Appeals held (at 133-134): 
"When defendant abandoned these premises prior to expiration of the lease, the landlord had three options: (1) it could do nothing and collect the full rent due under the lease (Becar v Flues, 64 NY 518, supra; Sancourt Realty Corp. v Dowling, 220 App Div 660), (2) it could accept the tenant's surrender, reenter the premises and relet them for its own account thereby releasing the tenant from further liability for rent, or (3) it could notify the tenant that it was entering and reletting the premises for the tenant's benefit. If the landlord relets the premises for the benefit of the tenant, the rent collected would be apportioned first to repay the landlord's expenses in reentering and reletting and then to pay the tenant's rent obligation (see, lease para [*5]18; Underhill v Collins, 132 NY 269; Centurian Dev. v Kenford Co., supra). Once the tenant abandoned the premises prior to the expiration of the lease, however, the landlord was within its rights under New York law to do nothing and collect the full rent due under the lease (see, Becar, 64 NY 518, supra; Underhill v Collins, 132 NY 269, supra; Matter of Hevenor, 144 NY 271).
"Defendant urges us to reject this settled law and adopt {**3 Misc 3d at 814}the contract rationale recognized by some courts in this State and elsewhere. We decline to do so. Parties who engage in transactions based on prevailing law must be able to rely on the stability of such precedents. In business transactions, particularly, the certainty of settled rules is often more important than whether the established rule is better than another or even whether it is the 'correct' rule (see, Maxton Bldrs. v Lo Galbo, 68 NY2d 373, 381). This is perhaps true in real property more than any other area of the law, where established precedents are not lightly to be set aside (Heyert v Orange & Rockland Utils., 17 NY2d 352, 360)."
Although the lease in Holy Props. expressly held that the landlord had no duty to mitigate by reletting the premises, the decision does not appear to be grounded on that basis. Moreover, although the decision involved a commercial lease, the Court of Appeals did not distinguish or even mention the treatment of residential leases.
In a post-Holy Props. case, Supreme Court Justice Donovan concluded that Holy Props. represented a complete adherence to the rule of Becar, and consequently, a residential lessor had no duty to mitigate. (Duda v Thompson, 169 Misc 2d 649 [Sup Ct, Westchester County 1996].) In a well-reasoned opinion, the court noted the varying interpretations by commentators ascribed to the Holy Props. case, and concluded that the case meant simply what was saidi.e., that there is no duty to mitigate (at 652-653):
"Some commentators have chosen not to view Holy Props. (supra) as having an effect on residential leases because of its factual setting, i.e., a commercial lease was at issue, and further because the Court did not expressly reject the recent body of case law imposing a mitigation obligation in residential lease disputes. The commentators find difficulty, however, having to concede that the Court found its support in Holy Props. in its 100-year-old holding in Becar (supra), a residential lease action and further, that the Court emphasized the policy need for certainty in long-settled precedents (Estis and Robbins, Landlord and Tenant Law, Commercial LeasesCourt Affirms Landlord Has No Duty to Mitigate Damages, NYLJ, Feb. 7, 1996, at 5, col 2). Another commentator, however, has reported and digested Holy Props.' lack of mitigation obligation{**3 Misc 3d at 815} without any attempted qualification based on character of the lease (Siegel, 436 NY St L Dig, at 3 [Apr. 1996]), just as the Court of Appeals itself made no analytical distinction. One legal reporter has taken just notice of the possible irrational consequences of attempting to continue the mitigation distinction between the two basic types of leases following the Holy Props. holdings (Schwartz, No-Mitigation Rule Still in Effect, NYLJ, June 10, 1996, at S1, col 3).
"Called upon here by defendant to continue such a distinction, the court is, however, compelled to apply Holy Props. (supra) as it more plainly reads, without distinction as to the lack of mitigation obligation based on the character of the lease itself. It does so not only based upon the obvious [*6]approval by the Court of Appeals of its own Becar v Flues residential lease holding and not only because the high Court itself makes no such distinction between the two types of leasesa succinct one to set forthbut also because the stated legal theory underpinning the holding, i.e., that leases, unlike contracts, constitute present transfers of estates solidifying the obligation to pay the full rent, would be vastly contradicted by attempting to continue any such distinction. The strong language of the Court in recognizing the need for clear and established precedent sufficient to permit reliance by those who are free to alter their obligations with differing terms, cannot be overcome, in this court's view, by any comely appeal to modernity. Hence, the court concludes that this plaintiff landlord is under no duty to mitigate prospective damages which will therefore be measured by both the past due and the accelerated payments . . . ." (Emphasis added.)
The Appellate Term, First Department, subsequently followed the same reasoning and analysis as Justice Donovan and declined to recognize a limitation on this doctrine to the commercial context, extending the holding to the residential arena in Whitehouse Estates v Post (173 Misc 2d 558 [App Term, 1st Dept 1997]). The court held (at 559): "While a commercial tenancy was the subject of the litigation in Holy Props. (supra), neither the language nor reasoning employed in the decision signals an intent on the part of the Court of Appeals to abrogate the no-mitigation rule in the context of residential landlord and tenant {**3 Misc 3d at 816}relationships (Duda v Thompson, 169 Misc 2d 649 [Sup Ct, Westchester County]) . . . Accordingly, we follow and apply the settled higher authority which relieves a landlord of any obligation to mitigate damages where the tenant has abandoned the premises prior to the expiration of the lease term." (Emphasis added and citations omitted.)
Despite these seemingly clear pronouncements, and the absence of any case decided by the Appellate Division adopting a duty to mitigate in residential cases, other courts (especially the lower courts in the Second Department) appear to adhere to the distinction in treatment between residential and commercial cases, which existed prior to the decision in Holy Props. These cases hold that there exists a duty to mitigate in the context of residential leases, but not with respect to commercial leases. (See, e.g., Palumbo v Donalds, 194 Misc 2d 675 [Civ Ct, Kings County 2003].) This analysis is supported by the expedient of citing only pre-Holy Props. cases. For example, in Palumbo (supra), the court held (at 686): "Of course, the landlord bears the burden of proving the amount of the lost rental income. (See Gettner v Getty Oil Co., 266 AD2d at 343-344, supra; Allen v Kowalewski, 239 AD2d 879, 880 [4th Dept 1997]; Malerba v Warren, 96 AD2d 529, 529 [2d Dept 1983]; Schreiber v Kleban, 63 Misc 2d at 630, supra.) And, in this judicial district, a landlord has a duty to mitigate damages by reletting the premises when the tenant leaves before the end of the term. (See Paragon Indus. v Williams, 122 Misc 2d 628 [App Term, 2d Dept 1983].) The same should be true when the tenant stays beyond the end of the term. (See 650 Park Ave. Corp. v McRae, 665 F Supp at 235, supra.) The landlord must make 'reasonable and diligent efforts to rerent the premises.' (See Goldman v Orange County Ch., N.Y. State Assn. for Retarded Children, 121 AD2d 683, 685 [2d Dept 1986])." (Emphasis added.)

Supreme Court Not Bound by Appellate Term Precedent

This court is not bound by the precedents of the Appellate Term, either in this department or in other departments. With respect to the Appellate Term of other departments, it has been held that the decisions of the Appellate Term of one judicial department are not binding in the lower courts of other departments (People v Pestana, 195 Misc 2d 833 [Crim Ct, Apr. 25, 2003]), and logically, such determinations would have less binding authority on the Supreme Court, which is not subject to the appellate jurisdiction of the Appellate Term. (See Manufacturers & Traders Trust Co. v Village of Forestville, 57 Misc 2d 973{**3 Misc 3d at 817} [Sup Ct, Erie County 1968] [rulings of the Appellate Term, Second Department, not binding on Supreme Court, Erie County].) No authority has been found suggesting that the Supreme Court is bound by decisions of the Appellate Term within its own judicial department.
In any event, this court declines to follow the holding in Whitehouse. Nor does this court accept the proposition that Holy Props. governs in the residential landlord-tenant context. The concept that a landlord can hold a residential tenant hostage to the terms of a lease, doing nothing and permitting damages to accrue when leased premises are readily marketable, is clearly contrary to common sense, the reasonable expectations of the public, and notions of justice and equity. It is already harsh justice which imposes an indefinite obligation upon a guarantor of a residential lease.[FN3]

To superimpose upon this harsh result the right of a landlord to make no effort to minimize damages is unconscionable, and violative of public policy. It is almost axiomatic that commercial leases may and should be governed by a different rule than residential leases. A commercial tenant which has negotiated a lease which provides that the landlord need not mitigate damages may take proper precautions against the possibility of default, may seek to assign or sublet, or may simply defer abandoning the lease. The same cannot be said of the average citizen in a mobile society, who may choose to or be required to relocate for a myriad of health-related or other personal reasons. Nor can this court endorse an antiquated rule of law which would encourage the warehousing of residential apartments, frustrate the mobility of the population, and result in an inequitable and intolerable burden on residential tenants.[FN4]

[*7]Accordingly, at the inquest on damages, the landlord {**3 Misc 3d at 818}should be prepared to demonstrate reasonable and diligent efforts to rerent the premises.
The motion is granted.
<
>[Portions of opinion omitted for purposes of publication.]
>

Footnotes

Footnote 1: The phrase "duty to mitigate" has been criticized as inexact. (See Flynn, Duty to Mitigate Damages Upon a Tenant's Abandonment, 34 Real Prop Prob & Tr J 721 [Winter 2000].) The term is used here as a term of art.

Footnote 2: Evidence has been submitted that the premises were in fact properly registered.

Footnote 3: Indeed, the broadly worded guarantee in this case would arguably extend to assignees of the original tenantstrangers to the guarantor. (See Barr v Country Motor Car Group, 221 AD2d 1003 [4th Dept 1995].)

Footnote 4: This decision accords with the majority view. As was reported in one scholarly article (Flynn, Duty to Mitigate Damages Upon a Tenant's Abandonment, supra, 34 Real Prop Prob & Tr J 721 [Winter 2000]):
"[T]he shift toward the view that a landlord should mitigate damages seems to have continued. Although courts often refer to the non-mitigation rule as the majority rule, twenty-eight states now impose an affirmative duty to mitigate on residential landlords. These states include Alaska, Arizona, California, Connecticut, Delaware, Hawaii, Illinois, Iowa, Kansas, Kentucky, Maine, Maryland, Montana, Nebraska, Nevada, New Jersey, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Washington, Wisconsin, and Wyoming. Five additional statesIdaho, Indiana, Michigan, Ohio, and Utahlikely would agree. The trend clearly is to adopt the duty to mitigate by statute, largely because of the application of contract principles to lease agreements. Furthermore, states recognize that the duty to mitigate serves several important public policies, which are often enumerated by the courts. 
"On the other hand, only fourteen states would hold that the residential landlord owes no duty to the tenant to mitigate damages on a tenant's abandonment of the premises. The states that refuse to recognize a duty to mitigate certainly give the landlord the option of mitigating on behalf of the tenant, but they refuse to impose an absolute duty because landlords and tenants rely on the long-standing non-mitigation rule. These states include Alabama, Arkansas, Colorado, Florida, Georgia, Massachusetts, Minnesota, Missouri, Mississippi, New Hampshire, Pennsylvania, Vermont, Virginia, and West Virginia. One additional state, New York, likely would agree."